KUNGLE, APPELLANT, *v.* EQUITABLE GENERAL INSURANCE COMPANY ET AL., APPELLEES AND CROSS-APPELLANTS; KEMMERLINE.

(No. 11898 — Decided August 7, 1985.)

*Edward H. Corbett,* for appellant.
*Bruce P. Mandel,* for Equitable General Insurance Company.
*Ronald B. Lee,* for Judy Marshall.
*John F. Herman,* for Max Kemmerline.

QUILLIN, J.   In this appeal we are faced with two questions. First, was the plaintiff, Kenneth J. Kungle, covered by a homeowners' insurance policy obtained by his ex-wife, defendant Judy Marshall, when fire destroyed their property in which he was residing after their marriage was dissolved? Second, to what extent, if any, did Marshall retain an insurable interest in the

residence despite her obligation to convey her one half of the premises to Kungle upon the receipt of $2,500?

The trial court ruled that Kungle was not covered by the policy but that Marshall had an insurable interest for her legal title to one half of the property. The court awarded Marshall one half of the damages to the property in excess of the mortgagee's interest and one half of the premiums that she had paid. We affirm as to the insurance company's liability to Marshall and Kungle. However, the judgment should be modified so as to allow Kungle an interest in Marshall's insurance award. We also remand for a determination of prejudgment interest.

The fire loss occurred in January 1982. Plaintiff Kenneth J. Kungle and defendant Judy Marshall were married in 1976. In 1978, the couple purchased a home in Akron, Ohio which was titled in both of their names. Both were obligated to pay the note and mortgage on the house. At that time, a homeowners' insurance policy was obtained with the premiums being added to the mortgage payments. In 1979, the couple switched their homeowners' coverage to defendant Equitable General Insurance Company ("Equitable"). The policy was obtained through Marshall's father, Max Kemmerline, an Equitable agent. Subsequently, marital difficulties ensued and the couple moved to Florida, during which time they substituted a policy from another company to cover the premises while rented. In 1980, they returned from Florida but only Marshall reoccupied the home. In December of that year, Marshall obtained a new Equitable policy on the property which named only her as the insured. However, as her husband, Kungle was also covered. This policy was also obtained through Kemmerline.

In April 1981, Kungle and Marshall entered into a separation agreement which provided for the transfer of Marshall's interest in the property to Kungle for $2,500. The transfer of the property and the payment by Kungle were to be done contemporaneously within thirty days of the dissolution decree which was filed in June 1981. However, Kungle has paid only part of his obligation and still owes Marshall the balance. Accordingly, Marshall has not transferred her interest in the property to Kungle.

Subsequently Kungle moved into the residence and Marshall moved out. In the fall of 1981, Marshall sought to enforce the provisions of the dissolution decree by moving that the domestic relations court hold Kungle in contempt. Pursuant to this motion, a referee recommended that Kungle either comply with his obligations or his interest in the premises would be transferred to Marshall. This recommendation was never adopted by the domestic relations court.

In December 1981, the Equitable policy, still in Marshall's name only, was routinely renewed; however, as Kungle was no longer her husband, he was not an insured. In January 1982, a fire occurred causing substantial damage to the residence. Equitable paid off the note and mortgage but made no payments to Kungle or Marshall. In January 1983, Kungle brought suit against Marshall, Kemmerline, and Equitable for the policy proceeds. Kungle claimed that Marshall and Kemmerline had committed fraud against him by not including Kungle as a named insured on the policy. At trial Kungle also claimed that Kemmerline was negligent in not placing Kungle's name on the policy. Further, Kungle asked the court to reform the policy to include him as a named insured.

Equitable filed a counterclaim for a judgment against Kungle declaring that Kungle was neither a named insured nor an insured in any other manner under the policy. Equitable also filed a cross-

claim against Marshall for a declaration that she had no insurable interest above the mortgage on the property at the time of the fire. In the alternative, Equitable argued that if Marshall had an insurable interest, it was limited to the balance of the $2,500 that Kungle still owed her.

Marshall responded by filing a cross-claim against Equitable for the value of the entire policy. In doing so, she claimed an insurable interest in the entire property based upon the referee's report which would possibly have given Marshall the entire property. In the alternative she argued at trial that she at least had an insurable interest in one half of the property. Marshall also sought punitive damages from Equitable based upon allegations of bad faith on its part in handling the matter.

At trial, the amount of damages in excess of the mortgage was stipulated to be $23,007.10. The trial court found for all of the defendants on Kungle's claims. In addition, the court found that Kungle was not insured. Marshall received judgment in her favor on her cross-claim against Equitable and its cross-claim against her. However, the court found she was entitled to damages of only $11,503.55 because she retained an insurable interest in only one half of the property. The trial court also ordered that Equitable refund to Marshall one half of the premiums paid on the policy because she had paid for coverage not received. Marshall then moved for pre-judgment interest on her award. This motion was never ruled on by the trial court.

## Kungle's Assignment of Error I

"The trial court erred in holding that the Equitable general agent, Max Kemmerline, owed no duty and could not be negligent towards plaintiff Kenneth Kungle, by failing to name him as an insured when Kemmerline issued the

Equitable General policy on December 8, 1980."

Kungle's first assignment of error deals with the issue of his rights, if any, under the insurance policy based upon a theory of negligence. The existence of a legal duty as an element of a negligence action depends upon the facts and circumstances of each case. 39 Ohio Jurisprudence 2d (1959) 499, Negligence, Section 13. If there is sufficient evidence to support the trial court's finding that Kemmerline owed Kungle no duty, we will not overturn its ruling. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261]. We find no error in the trial court's holding that Kungle had failed to prove a duty on Kemmerline's part.

Kungle testified that he no longer considered Kemmerline his insurance agent at the time the policy was issued. In addition, the evidence shows that no written or oral agreement to obtain insurance coverage existed between Kungle and Kemmerline. Kungle also admitted that he never contacted Kemmerline or any other insurance agent about coverage on the property in spite of the dissolution of his marriage. At the time the policy was first written, Kungle was insured as Marshall's husband. It was only the divorce which denied him further coverage. Based on these circumstances, we find no error in the trial court's holding that Kemmerline did not owe Kungle a duty to name him as an insured. Accordingly, the assignment of error is overruled.

## Kungle's Assignment of Error II

"The trial court erred in holding that agent Max Kemmerline's act in excluding Kenneth Kungle from coverage under the policy being issued could not constitute a fraudulent or adverse act against Kenneth Kungle due to the fact that the agent listed his daughter as 'married' on the application, and had not

intended to name her husband on the policy."

"It is well settled that an insurance agent will be liable to his applicant or insured for damages resulting from the agent's false and fraudulent representations which the insured has relied upon to his damage. * * *" *Bohn* v. *Abbott* (1975), 44 Ohio Misc. 102, 106 [73 O.O.2d 492]. The existence of fraud is also an issue of fact. 51 Ohio Jurisprudence 3d (1984) 130, Fraud and Deceit, Section 267. In this case, as discussed above, Kungle had no contact with Kemmerline during the time in question. There were no representations from Kemmerline to Kungle upon which to rely. In addition, the trial court also had sufficient evidence to find that Kemmerline acted only in good faith. Thus, the assignment of error is overruled.

### Kungle's Assignment of Error III

"The trial court erred in holding, despite the agent's knowledge of facts imputable to the insurer, that the facts of this case do not justify * * * reformation of the insurance contract because of lack of 'mutual mistake of fact.' "

In *Wagner* v. *National Fire Ins. Co.* (1937), 132 Ohio St. 405 [8 O.O. 216], the Ohio Supreme Court set forth the circumstances in which reformation of a contract for mutual mistake is proper:

"Mutual mistake is the mistake of all parties to the contract. Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them; in such a case equity affords the restorative remedy of reformation in order to make the writing conform to the real intention of the parties. * * *" *Id.* at 412.

Reformation of an insurance contract thus may be available when the true intent of the parties is not expressed due to fraud or inequitable conduct on the part of the insurer's agent. *R. K. LeBlond Machine Tool Co.* v. *Humboldt Fire Ins. Co.* (1914), 6 Ohio App. 313, affirmed without opinion (1915), 92 Ohio St. 541. In this case Kungle was not a party to the contract. The parties to the contract only intended that Marshall be named as the insured on the policy application and the policy. The true intent of the parties was thus expressed. The assignment of error is therefore overruled.

### Equitable's Assignments of Error

"I. The trial court erred in determining that defendant Marshall had the requisite insurable interest to collect fire insurance proceeds when, prior to the subject fire, defendant Marshall had relocated from the insured dwelling, removed all of her personal belongings, remarried, and entered into a separation agreement adopted by the court in a subsequent judgment entry, mandating transfer of defendant Marshall's title interest in the property upon payment of a minimal sum by her ex-husband.

"* * *"

### Kungle's Assignment of Error IV

"The trial court erred in holding that although Equitable General's policy and the premium therefore were based on coverage to the full value of the * * * property, a breach of the separation agreement had occurred and that such breach served to reduce Equitable General's coverage to an undivided one-half share, which such company owed to Judy Marshall (formerly Kungle), along with a return of one-half the premium paid."

Although we are not here presented with an executory contract for the sale of realty, the principles applicable to such a relationship are instructive and worthy of review.

Who is to bear the loss if, between the time of the agreement to sell and the

actual transfer of title, damage to the property occurs? In absence of a contractual agreement as to risk of loss, three primary common-law rules have evolved.

The first rule places the risk of loss on the vendor until title passes. The second rule places the risk of loss on the party in possession. The third rule, and that followed in Ohio, places the risk of loss on the vendee after the contract has been signed. Annotation, Vendor and Purchaser: Risk of Loss by Casualty Pending Contract for Conveyance (1953), 27 A.L.R. 2d 444. This rule is based on the doctrine of equitable conversion. This doctrine, in turn, is founded on the equitable principle that the beneficial interest in the property passes to the vendee and the vendor holds the legal title in trust for the vendee subject to whatever claim the vendor might still possess.

When there is insurance covering the loss, additional legal principles come into play. Property insurance is based on indemnity. If there is no interest there can be no loss. If there is no loss, there is nothing to indemnify. It is against public policy to insure for one's own benefit the property of another in which the first person has no interest. *Phillips* v. *Cincinnati Ins. Co.* (1979), 60 Ohio St. 2d 180 [14 O.O.3d 413]. Such an insurance contract is held to be void because it might encourage intentional or reckless damage to the insured property.

The harshness of the rule which places the risk of loss on the vendee is lessened when a trust for the benefit of the vendee is imposed on the proceeds of the insurance. While difficult to fit neatly into the general rules of property or insurance law, the result is certainly the most equitable.

Should the insurance company which has presumably collected premiums commensurate with the risk be allowed to avoid a risk for which it has been fully compensated? This does not seem to be a result of high priority.

Should the vendor be permitted to keep both the proceeds of the insurance as well as the consideration for the conveyance? The same policy considerations which void insurance contracts which benefit one person for another person's loss would likewise discourage this result.

Should the vendee who is not an insured benefit from the vendor's policy? The vendee has not profited by the loss. He receives the property in a damaged condition. True, he has benefited from a policy for which he has paid no premium; but if the vendor is reimbursed the cost of the premiums from the insurance proceeds, the vendor suffers no loss. Of the three choices, this is clearly the most equitable. *Peck* v. *Hale* (1919), 11 Ohio App. 418; Annotation, Rights of Vendor and Purchaser, as Between Themselves, in Insurance Proceeds (1959), 64 A.L.R. 2d 1402.

Therefore, when A has insurance on property which he contracts to sell to B, but before the title is transferred a loss occurs, A may collect from his insurance company. However, A holds the insurance proceeds in trust for B subject to A's claim for unpaid compensation and reimbursement for premiums paid.

Applying the above principle to our facts, Marshall is entitled to recover one half of the stipulated damages. She holds this in trust for Kungle subject to a setoff for the balance of the $2,500 owed to her by Kungle and further subject to a reimbursement for insurance premiums paid on her one-half interest.

By our holding, we reject Equitable's argument that Marshall's interest must be evaluated under the terms of the dissolution decree. Equitable has no right to benefit from the artificially low value put on the property in the dissolution decree. That decree only adjudicates the rights of Kungle and Marshall as between themselves, not the rights of Marshall vis-a-vis the insurance company. For example, an owner of property may be willing to sell his prop-

erty for less than cash value because of "* * * his need for ready cash; his disinclination to wait for an advantageous offer because of the attendant inconveniences during the waiting period; his wish to benefit an individual or an institution by donating the property to the beneficiary, or selling it under the market value. * * *" *First Natl. Bank* v. *Boston Ins. Co.* (1958), 17 Ill. App. 2d 159, 170, 149 N.E. 2d 420, 425, affirmed (1959), 17 Ill. 2d 147, 160 N.E.2d 802. Likewise, a husband or wife may be willing to settle for a lesser sum during dissolution proceedings. As in this case, a party may wish to terminate the marriage as quickly and painlessly as possible to remarry, move elsewhere, etc. In these or similar circumstances, the insurance company has no right to appropriate to itself the difference between the actual cash value of the owner's interest and the lesser amount for which the sale or exchange for marital rights was made. *First Natl. Bank* v. *Boston Ins. Co., supra.*

Marshall's Assignment of Error II

"The court erred in not awarding punitive damages against Equitable General."

Punitive damages may be recovered against an insurer which breaches its duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer. *Hoskins* v. *Aetna Life Ins. Co.* (1983), 6 Ohio St. 3d 272, paragraph two of the syllabus. Actual malice has been defined as that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation, or a determination to vent his feelings upon other persons. *Columbus Finance* v. *Howard* (1975), 42 Ohio St. 2d 178, 183-184 [71 O.O.2d 174]. In addition it has been stated that the conduct of the insurer in refusing to settle must be arbitrary or capricious to meet these standards. See *Hart* v.

*Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185 [39 O.O. 465]. The mere fact that an insurer refused to settle is not conclusive of bad faith; the insured has the burden to show that the refusal was not made in good faith. *Hoskins* v. *Aetna Life Ins. Co., supra,* at 276. We hold that the trial court did not err in refusing to award punitive damages based on these principles.

Equitable was faced with a complex situation involving two claimants to the proceeds. In the course of Equitable's investigation they also discovered the various facts of the dissoluton of Marshall and Kungle's marriage. The complications inherent in this situation, as discussed above, support a conclusion that Equitable's actions were not taken in bad faith or done with actual malice. The trial court did not err by failing to award punitive damages. Marshall, in order to obtain punitive damages, also claims that Equitable committed unfair trade practices in violation of the Ohio Administrative Code sections which are part of the regulation of insurance companies. However, this issue was not raised in the trial court and therefore we will not consider it.

The assignment of error is overruled.

Marshall's Assignment of Error III

"The court erred in not ruling upon and awarding prejudgment interest to the defendant Judy Marshall on her cross-claim against the defendant Equitable General."

Finally Marshall argues that she should receive prejudgment interest on her award pursuant to R.C. 1343.03. The trial court did not rule on the motion. Therefore, we remand for the trial court to determine the propriety of such an award. The assignment of error is thus well-taken.

Summary

The cause is remanded to the trial

court for further proceedings consistent with this opinion.

*Judgment modified and cause remanded.*

GEORGE, P.J., and BAIRD, J., concur.