**In re Robert C. McCAFFERTY, Debtor.**

**Robert C. McCAFFERTY,
Petitioner–Appellee,**

v.

**Marion McCAFFERTY, Respondent–
Appellant.**

No. 95–3919.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 6, 1996.

Decided Sept. 18, 1996.

Carl D. Rafoth, James B. Dietz (argued and briefed), Friedman & Rummel Co., Youngstown, OH, for petitioner–appellee.

Marc E. Dann (argued and briefed), Marilyn M. McMillin (briefed), Betras & Dann, Youngstown, OH, for respondent–appellant.

Before: LIVELY, KENNEDY, and SILER, Circuit Judges.

LIVELY, Circuit Judge.

The question raised by this appeal is whether a portion of a husband's state government pension awarded to his former wife in a divorce decree is a dischargeable debt in the husband's subsequent bankruptcy proceeding. The bankruptcy court held that the obligation imposed upon the husband was dischargeable, and the district court agreed. We have appellate jurisdiction under 28 U.S.C. § 158(d) (1988).

## I.

Robert C. McCafferty and Marion McCafferty were married in 1969. In 1992, Mr. McCafferty filed for divorce in the Court of Common Pleas in Columbiana County, Ohio. In a February 1993 order, the court granted the divorce and determined that the proceeds from a sale of the parties' marital property—including a marital residence and various household items—would be divided equally between the parties. The court also found that 97 percent of Mr. McCafferty's pension through the State Teachers Retirement System (STRS) had accrued during the marriage and held that Ms. McCafferty was entitled to one-half of the value of the pension on the date of the divorce, or $100,250.21. The court noted that the $100,250.21 judgment was awarded to Ms. McCafferty "as a distribution of her interest in [Mr. McCafferty]'s

retirement plan" and called the award a "property distribution." Mr. McCafferty was ordered to pay the $100,250.21 judgment in installments of $1,500 each month, beginning in January 1998. At the time of the decree, Mr. McCafferty had not yet retired and had earned 24 years of service credit under the STRS.

In addition, the court ordered Mr. McCafferty to pay all the joint debts of the marriage, with the exception of the debts against the marital residence, which were to be paid from the proceeds of its sale, and to pay Ms. McCafferty $200 per week in spousal support payments from March 1993 until March 1998.

Mr. McCafferty filed a petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (1988), seven months after the entry of the divorce decree. He listed Ms. McCafferty as a holder of unsecured debts. On October 28, 1993, Mr. McCafferty filed an adversary complaint in the bankruptcy court to seek discharge from the judgment of $100,250.21 and the joint debts that he was obligated to pay under the divorce order. Ms. McCafferty filed an answer and counterclaim asserting that the distribution and liability for joint debts under the divorce decree were in the nature of alimony, maintenance or support and therefore exempt from discharge under 11 U.S.C. § 523(a)(5) (1988).

At the request of Ms. McCafferty, the bankruptcy court modified the automatic stay in order to permit the parties to seek clarification from the state court of its February 1993 divorce order. After Ms. McCafferty filed a motion for clarification in the state court, the state court issued a nunc pro tunc judgment entry that overruled her motion, but which stated that the distribution of the STRS benefits and the order to pay joint debts were intended as a property division, not as a spousal support award.

Both parties then filed motions for summary judgment in the bankruptcy proceeding. Ms. McCafferty argued, in relevant part, that because the February 1993 divorce order immediately divested Mr. McCafferty of any equitable interest in her share of the retirement account, the $100,250.21 judgment could not be included in the debtor's bankruptcy estate or treated as a dischargeable debt. See 11 U.S.C. § 541(d) (1988). On June 24, 1994, the bankruptcy court rejected Ms. McCafferty's argument, relying on the analysis of *In re Calhoun*, 715 F.2d 1103, 1109–10 (6th Cir.1983) (determining whether a debtor's assumption of joint debts pursuant to a pre-petition divorce decree was in the nature of spousal support or a property division), and granted summary judgment in favor of Mr. McCafferty. The court found that under *Calhoun*, the obligations at issue were dischargeable since the nunc pro tunc judgment entry by the domestic relations court unequivocally stated that the obligations were intended to operate as a property division. Ms. McCafferty appealed the decision to district court. The district court upheld the decision, also relying on *Calhoun*.

## II.

On appeal, Ms. McCafferty seeks review only of the bankruptcy court's treatment of her claim to the retirement benefits as a dischargeable debt. She does not contest Mr. McCafferty's discharge from their joint debts. Citing *In re Wilson*, 158 B.R. 709, 711 (Bankr.S.D.Ohio 1993), and similar cases, Ms. McCafferty has reasserted her argument that by virtue of the divorce decree, her share of the pension benefits was her sole and separate property held in constructive trust by her former husband and could not be considered property of Mr. McCafferty's bankruptcy estate. In the alternative, she urges this court to adopt the approach of the Court of Appeals for the Eighth Circuit in *Bush v. Taylor*, 912 F.2d 989, 993 (8th Cir. 1990) (en banc), which found in part that a debtor's continuing obligation to pay his ex-wife, in monthly installments, a portion of his retirement benefits did not constitute a *pre-petition* debt because his obligation to pay did not mature until the fifteenth of each month.

Mr. McCafferty, in turn, insists that the bankruptcy court properly applied the *Calhoun* analysis and that his ex-wife's constructive trust theory was foreclosed by *In re Omegas Group, Inc.*, 16 F.3d 1443 (6th Cir. 1994), which was decided four months before

the bankruptcy court rendered its decision but not relied upon by the bankruptcy court. In light of *Omegas Group,* Mr. McCafferty contends his ex-wife could not maintain successfully that she was the equitable owner of assets held by him in constructive trust at the time the bankruptcy case commenced unless she could show that another court had already imposed such a constructive trust. See *id.* at 1449. This, he says, she could not do. As to the unmatured debt theory, Mr. McCafferty argues that the theory was not presented before either the bankruptcy court or the district court and thus should not be considered on appeal. He contends that the Bankruptcy Code's broad definition of a dischargeable "debt" would clearly encompass his pension obligation to his former wife. See 11 U.S.C. §§ 101(5), (12) (Supp. II 1990).

■ The bankruptcy court's decision to grant summary judgment was based purely on a conclusion of law. *In re Batie,* 995 F.2d 85, 88 (6th Cir.1993). Accordingly, the district court's *de novo* review of that decision is reviewed under a *de novo* standard by this court as well. *Id.* at 88–89.

### III.

### A.

■ Summary judgment under Fed. R. Civ. P. 56(c), made applicable to bankruptcy adversary proceedings by Fed R. Bankr.P. 7056, is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The parties agree that the case presents no factual issues and that it was properly subject to summary judgment. Their disagreement, of

course, concerns who was entitled to that judgment. Thus, we now examine the applicable law.

### B.

■ We agree with the district court's conclusion that Mr. McCafferty's obligation to his ex-wife with respect to the STRS benefits could not be exempted from discharge under 11 U.S.C. § 523(a)(5). Section 523 of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141,, [sic] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> *   *   *   *   *   *
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record. . . .

11 U.S.C. § 523(a)(5).[1] Where the state court or the parties to the divorce did not intend to create an obligation in the nature of support, that obligation cannot qualify for a section 523(a)(5) exemption. *Calhoun,* 715 F.2d at 1109. Here, as the district court found, the state court clearly indicated that the pension distribution was not intended to be a spousal support award, so Ms. McCafferty was not entitled to prevail under 11 U.S.C. § 523(a)(5). Nevertheless, the applicability of section 523(a)(5) and *Calhoun* is simply irrelevant if, as Ms. McCafferty claims, her share in pension benefits was not eligible for discharge because it was never part of the bankruptcy estate. We believe Ms. McCafferty's constructive trust argument, perfunctorily dismissed by the district court as "misplaced," requires further discussion.

---

1. Note that Ms. McCafferty might have benefitted from 11 U.S.C. § 523(a)(15) if it had been in effect at the time. The provision, effective October 22, 1994, exempts from discharge, subject to certain exceptions, all debts "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record. . . ." 11 U.S.C.A. § 523(a)(15) (West Supp. 1996); see Pub.L. No. 103–394, § 304(e), 108 Stat. 4106, 4133 (1994).

## C.

Section 541 of the Bankruptcy Code states that the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). However, section 541(d) provides that "[p]roperty in which the debtor holds ... only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Section 541(d) has often been invoked as the basis for excluding from a bankruptcy estate assets held in constructive trust by the debtor in favor of another. *Omegas Group,* 16 F.3d at 1448; see, *e.g., In re Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir.1985); *In re General Coffee Corp.,* 828 F.2d 699 (11th Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988).

In *Omegas Group,* this court reversed a bankruptcy court's imposition of a constructive trust for the benefit of a creditor over assets a debtor had allegedly acquired from the creditor through fraudulent means. *Omegas Group,* 16 F.3d at 1445–46, 1451. The creditor, XL/Datacomp, claimed that the debtor, Omegas, had swindled it out of $1.1 million by failing to reveal that its financial difficulties might prevent it from carrying out its end of a business deal. The court first explained that a constructive trust was not actually a trust, but rather a common-law remedy for unjust enrichment developed in equity. *Id.* at 1449. Then, noting that bankruptcy courts should be reluctant to impose constructive trusts because they thwart the policy of ratable distribution, the court held:

> We think that § 541(d) simply does not permit a claimant in the position of Datacomp to persuade the bankruptcy court to impose the remedy of constructive trust for alleged fraud committed against it by the debtor in the course of their business dealings, and thus to take ahead of all creditors, and indeed, ahead of the trustee. Because a constructive trust, unlike an express trust, is a remedy, it does not exist until a plaintiff obtains a judicial decision finding him to be entitled to a judgment "impressing" defendant's property or assets with a constructive trust. Therefore, a creditor's claim of entitlement to a constructive trust is not an "equitable interest" in the debtor's estate existing prepetition, excluded from the estate under § 541(d).

*Id.* at 1451. The court emphasized that the imposition of a constructive trust in that case would have undermined completely one of the Bankruptcy Code's primary goals—equitable distribution—taking value directly from the fair share of competing creditors, but not affecting the debtor guilty of the fraud. *Id.* at 1452–53.

■ Despite Mr. McCafferty's arguments, we do not believe that his former wife was in the same position as the creditor in *Omegas Group* who argued for a constructive trust. *Omegas Group* arose out of a situation in which a claim based on state property law could not be reconciled with a major goal of federal bankruptcy law—ratable distribution among creditors. See *id.* at 1450–51 (citation omitted) (recognizing that " 'state law must be applied in a manner consistent with federal bankruptcy law' "); see *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (stating that property interests in a bankruptcy proceeding should be analyzed under state law unless federal law would require a different result). When such a conflict occurs, bankruptcy policy prevails. The Supreme Court has noted, however, that the policy of ratable distribution would not be relevant where the property at issue was not subject to distribution to creditors. In the context of discussing a bankruptcy trustee's avoidance powers under 11 U.S.C. § 547(b) (1988), the Court stated:

> Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property.... Of course, if the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, [that] policy ... is not implicated.

*Begier v. I.R.S.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2262–63, 110 L.Ed.2d 46 (1990) (citation omitted). Here, Mr. McCafferty's STRS benefits would not have been subject to the reach of creditors, even after he filed for bankruptcy. See Ohio Revised Code (O.R.C.) § 3307.71 (1994) (providing that STRS benefits "shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency laws, or any other process of law whatsoever . . . ."); see also 11 U.S.C. § 541(c)(2) (1988) ("A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."). Thus, recognizing a constructive trust under state law in favor of Ms. McCafferty would not hinder bankruptcy policy inasmuch as it would not diminish the pro rata share of any other creditors of the debtor.

Moreover, *Omegas Group* would allow "property already impressed with a constructive trust by a court in a separate proceeding prepetition . . ." to be excluded from a bankrupt's estate. *Omegas Group,* 16 F.3d at 1451. There was no such separate proceeding prior to the bankruptcy petition in *Omegas Group.* Rather, the creditor there requested that the bankruptcy court *impose* a constructive trust. *Id.* at 1446. Here Ms. McCafferty asserts that the STRS benefits were already "impressed" with a constructive trust at the time of the bankruptcy filing by operation of the February 1993 divorce decree. Thus, unlike the creditor in *Omegas Group,* Ms. McCafferty did not ask the bankruptcy court to impress the bankruptcy estate with a constructive trust. Instead, she asked the court to recognize that property awarded to her by a state court prior to bankruptcy did not become part of the bankruptcy estate.

Mr. McCafferty argues that since no court has expressly dubbed him the constructive trustee of his ex-wife's pension share, she had only a "claim" for a constructive trust

remedy. The domestic relations court clearly did not use the magic words "constructive trust" in its divorce order. We must therefore determine whether the pre-petition Ohio divorce order gave rise to a constructive trust according to Ohio law. See *Butner,* 440 U.S. at 55, 99 S.Ct. at 918; *Omegas Group,* 16 F.3d at 1450.

### IV.

### A.

Upon the termination of a marriage, O.R.C. § 3105.171 requires Ohio's courts to divide the marital property between the spouses in an equitable manner. O.R.C. § 3105.171(B), (C)(1) (1995 Supp.). Retirement benefits are included as marital property subject to division, and each spouse is presumed to have contributed equally to the production and acquisition of such benefits during the course of the marriage. O.R.C. § 3105.171(A)(3)(a)(ii), (C)(2) (1995 Supp.); *Hoyt v. Hoyt,* 53 Ohio St.3d 177, 178, 183, 559 N.E.2d 1292 (1990). Under Ohio law, "[o]nce the division of property is fixed by the court, both spouses are legally entitled to the share respectively allotted to them." *Zimmie v. Zimmie,* 11 Ohio St.3d 94, 97, 464 N.E.2d 142 (1984); see also *Erb v. Erb,* 75 Ohio St.3d 18, 22, 661 N.E.2d 175 (1996) (divorce decree found to have awarded the wife a separate ownership interest in the husband's pension benefits); *Wilson,* 158 B.R. at 711 (holding that as a result of a divorce decree, the debtor's former wife became the equitable owner of a portion of the assets in the debtor's retirement fund). The instant divorce decree specifically designated the $100,250.21 judgment as Ms. McCafferty's "interest in [Mr. McCafferty]'s retirement plan." Based on our review of state law and the language of the divorce decree, we conclude that the Ohio divorce order awarded Ms. McCafferty a separate property interest in a portion of the STRS benefits from Mr. McCafferty's employment.[2]

---

**2.** Some courts have concluded that the former spouse's interest in the debtor's pension plan was not part of the debtor's estate based only upon the fact that the pension distribution was the former spouse's sole and separate property. See, *e.g., Resare v. Resare,* 154 B.R. 399, 402–03

(D.R.I.1993); *In re Stolp,* 116 B.R. 131, 133 (Bankr.W.D.Wis.1990); *In re Debolt,* 177 B.R. 31, 37–39 (Bankr.W.D.Pa.1994). Those cases may be distinguished from the instant case, however, because the pension payments were paid by the plan administrator directly to the former

## B.

Having found that the divorce decree awarded to Ms. McCafferty a separate interest in her husband's pension benefits, we now determine whether the effect of the divorce decree was to "impress" a constructive trust upon those assets. The Ohio Supreme Court has defined a constructive trust as " 'a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.' " *Ferguson v. Owens,* 9 Ohio St.3d 223, 225, 459 N.E.2d 1293 (1984) (quoting 76 Am. Jur.2d *Trusts* § 221, at 446 (1975)). The *Ferguson* court explained that a constructive trust is an application of the equitable maxim, "equity regards done that which ought to be done." *Id.* at 226, 459 N.E.2d 1293.

While most Ohio cases dealing with constructive trusts address the question of whether the court itself should impose a constructive trust, some opinions state that a constructive trust can arise in Ohio by operation of law, even without judicial action. In *Kungle v. Equitable Gen. Ins. Co.,* 27 Ohio App.3d 203, 500 N.E.2d 343 (1985), the defendant had agreed, pursuant to a separation agreement, to transfer her one-half interest in a marital home to the plaintiff, her former husband, in exchange for $2,500. *Id.* at 204, 500 N.E.2d 343. Both parties delayed fulfillment of their obligations under the agreement, and before the transfer of interest took place, the house was severely damaged by fire. At the time, only the defendant was named as the insured under the homeowner's insurance policy on the property. The husband filed suit, claiming fraud and seeking payment of the insurance proceeds. *Id.* The court noted that Ohio placed the risk of loss on the vendee after a contract for the sale of real estate is signed. Based on the doctrine of equitable conversion, the beneficial interest in the property passed to the vendee upon execution of the contract, "and the vendor [held] the legal title in trust for the vendee subject to whatever claim the vendor might still possess." *Id.* at 207, 500 N.E.2d 343. The court then applied the same rule to the insurance proceeds, stating:

> [W]hen A has insurance on property which he contracts to sell to B, but before the title is transferred a loss occurs, A may collect from his insurance company. However, A holds the insurance proceeds in trust for B subject to A's claim for unpaid compensation and reimbursement for premiums paid.

*Id.* Another Ohio appellate court stated that a constructive trust had been defined to arise " 'where a person holding title to property is subject to an *equitable duty* to convey it to another on ground that he would be unjustly enriched if he were permitted to retain it. . . .' " *Croston v. Croston,* 18 Ohio App.2d 159, 162, 247 N.E.2d 765 (1969) (quoting Restatement of the Law of Restitution 640, Section 160) (emphasis added to Restatement text by Ohio court). This language indicates that it is not necessary for a court in Ohio to declare a constructive trust; it *arises* by operation of law to prevent unjust enrichment.

█ In any event, there clearly was judicial action in this case in the form of a divorce decree declaring the parties' respective property rights and awarding specific property to Ms. McCafferty. One bankruptcy court in Ohio has stated that "where there is a valid Domestic Relations Court order predating the bankruptcy, there has in fact been a judicial determination by a court in a separate proceeding that the Debtor's property is held for the benefit of another." *In re McGraw,* 176 B.R. 149, 151–52 (Bankr. S.D.Ohio 1994). We agree. Having already determined that Ms. McCafferty had a separate interest in the pension plan, we believe the Ohio court's order created a constructive trust to protect that interest which survived bankruptcy, regardless of whether the court

spouse. Since the money never passed to the debtor, there were no assets which the debtor

could hold in constructive trust.

actually used the words "constructive trust." According to *Omegas Group*, a constructive trust may only exist by grace of a judicial action which orders one party to convey property to another. *Omegas Group*, 16 F.3d at 1449 (quoting Emily L. Sherwin, *Constructive Trusts in Bankruptcy*, 1989 U. Ill. L.Rev. 297, 301 (1989)). The divorce decree in the present case did just that.

After determining the value of the portion of Mr. McCafferty's retirement benefits that accrued during marriage, the divorce decree stated:

> The defendant [Ms. McCafferty] is awarded One Hundred Thousand Two Hundred Fifty and 21/100 Dollars ($100,250.21) from the plaintiff as a *distribution of her interest* in the plaintiff's retirement plan. This is a property distribution. (emphasis added).

The court having entered judgment for the stated amount as "a distribution of her interest" in the retirement plan, we believe Mr. McCafferty retained only a bare legal title in the designated portion of the plan's benefits and that Ms. McCafferty became the equitable owner of the retirement plan to that extent. Thus, this property interest never became part of the bankruptcy estate. 11 U.S.C. § 541(d). Since it would result in an unjust enrichment for Mr. McCafferty to receive the entire value of the retirement benefits, a constructive trust arose to the extent of the interest awarded to Ms. McCafferty. The divorce decree provided the required judicial order.

## C.

The Supreme Court of Ohio, in a recent case involving a divorced wife's interest in her husband's public pension plan, appears to have endorsed the result we reach here. Though stated in dicta, the court's language in *Erb v. Erb*, 75 Ohio St.3d 18, 661 N.E.2d 175 (1996), strongly reinforces our conclusion:[3]

> It is true, as Wife contends, that should Husband file a petition in bankruptcy, his obligation to pay Wife directly as part of a property settlement in a divorce might not qualify as an exception to discharge under Section 523(a)(5) of the Bankruptcy Code. See, *e.g.*, *In re Wilson* ([Bankr.]S.D.Ohio 1993), 158 B.R. 709, 712; Section 523(a)(5), Title 11, U.S.Code. However, Wife's separate property interest in Husband's pension would neither be a part of Husband's bankruptcy estate nor be subject to the jurisdiction of the bankruptcy courts. *Wilson*, 158 B.R. at 711. Thus, a discharge of Husband's obligation to pay Wife directly would not affect Wife's ownership interest in the pension itself. *Id.* at 712–713. Because Wife's interest would not be affected by a discharge and because Husband would remain subject to the contempt powers of the domestic relations court, Wife's interest would continue to be adequately protected.

*Id.* at 22 n. 3, 661 N.E.2d 175. It is noteworthy, we believe, that the *Erb* court reached its conclusion in reliance on *In re Wilson*, which the district court in the present case discounted and declined to follow.

It makes no difference that the payments to Ms. McCafferty do not begin until 1998 or that Mr. McCafferty's interest in the benefits may or may not have matured at that time (depending on when he takes retirement). The Ohio court enjoyed complete discretion in determining how best to divide the retirement benefits. See *Hoyt*, 53 Ohio St.3d at 178–83, 559 N.E.2d 1292. The court's decree irrevocably established Ms. McCafferty's separate interest in her husband's pension benefits and determined that direct payment by her husband would best protect her interest. How the pension distribution was to be effected does not change the fact that Ms. McCafferty was the equitable owner of $100,250.21 of the pension benefits when Mr. McCafferty began this bankruptcy proceeding.

## CONCLUSION

We find that Ms. McCafferty's award of pension benefits did not constitute property

---

3. The pension plan discussed in *Erb*, like the plan at issue here, was a government retirement system created under Ohio law and exempted from the scope of the Employee Retirement Income Security Act of 1974 (ERISA). See 29 U.S.C. §§ 1002(32), 1003(b)(1) (1988).

of the bankruptcy estate under 11 U.S.C. § 541 and was therefore not a dischargeable debt. In so finding, we believe that both the mandate of the state court and the goals of the bankruptcy court will be upheld. No known policy would be furthered by allowing Mr. McCafferty to manipulate the bankruptcy system as a means to emasculate the decree of a state domestic relations court. As the court in *Bush v. Taylor*, 912 F.2d at 994, stated: "We doubt that Congress ever intended that a former wife's judicially decreed sole and separate property interest in a pension payable to her former husband should be subservient to the Bankruptcy Code's goal of giving the debtor a fresh start." This belief is supported by the fact that Congress amended the Bankruptcy Code in 1994 to allow exemptions from discharge for all obligations incurred as a result of a divorce decree. See 11 U.S.C. § 523(a)(15).

We express no opinion as to the merits of Ms. McCafferty's unmatured debt argument.

The judgment of the district court is **REVERSED** and the case is **REMANDED** with direction that the district court remand it to the bankruptcy court for entry of a judgment finding that Ms. McCafferty's interest in the pension benefits is not part of the bankruptcy estate and is, therefore, not a dischargeable debt.