CARPENTER et al., Appellants,

v.

SCHERER–MOUNTAIN INSURANCE AGENCY et al., Appellees and Cross–
Appellants; Board of Commissioners of Lawrence County, Appellees.

[Cite as *Carpenter v. Scherer–Mountain Ins. Agency* (1999), 135 Ohio App.3d 316.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 98CA39.

Decided Oct. 19, 1999.

318

320

*Marty J. Stillpass,* for appellants.

*Bannon, Howland & Dever Co., L.P.A., Steven M. Willard* and *Sherry D. Davis,* for appellees and cross-appellants.

*Lambert & McWhorter* and *Randall L. Lambert,* for cross-appellee.

---

HARSHA, Judge.

Plaintiffs Robert and Charlene Carpenter sued defendants Scherer–Mountain Insurance Agency and Richard Mountain ("Scherer–Mountain") after a flood damaged their home. The Carpenters alleged that Scherer–Mountain negligently issued an inadequate flood insurance policy and misrepresented the extent of the policy's coverage. Scherer–Mountain filed a third-party complaint against the Lawrence County Board of Commissioners, alleging that any damages the Carpenters had suffered were due to the commissioners' failure to properly implement policies under the National Flood Insurance Program ("NFIP"). The trial court granted summary judgment in favor of Scherer–Mountain on the Carpenters' complaint and in favor of the commissioners on the third-party complaint. The Carpenters appeal and raise a single assignment of error:

"The court below erred in granting summary judgment in favor of the defendants and third-party plaintiffs, Scherer–Mountain Insurance Agency, et al., against the plaintiff–appellants, Robert L. Carpenter and Charlene Carpenter."

In turn, Scherer–Mountain appeals the summary judgment granted to the commissioners on its third-party complaint. Scherer–Mountain raises a single error:

"The trial court improperly granted third-party defendant–appellee's motion for summary judgment, as there are genuine issues of material fact which preclude the entry of summary judgment as a matter of law."

We hold that the trial court erred in part in granting Scherer–Mountain's motion for summary judgment against the Carpenters, as genuine issues of material fact remain concerning the Carpenters' causes of action for misrepresentation. However, the trial court correctly granted summary judgment on the third-party complaint, as the commissioners are immune from liability for the acts alleged by Scherer–Mountain.

## I

The facts giving rise to the litigation in this case are largely undisputed. In 1993, the Carpenters entered into a real estate purchase contract to buy a home in Proctorville, Ohio for $64,500. The contract was conditioned upon the Carpenters obtaining a conventional loan of at least $35,000 secured by a mortgage on the property. The Carpenters were to pay the remainder of the purchase price in cash on the date of closing. After signing the real estate purchase contract, the Carpenters obtained a $35,000 loan from the National City Mortgage Company ("National City") to finance their purchase of the home. According to the Carpenters, National City required them to obtain flood insurance for the home as a condition to the loan. The Carpenters were aware that the home was located in an area susceptible to flooding and had already contemplated purchasing flood insurance.

Prior to the closing date for the purchase of the property, the Carpenters contacted Scherer–Mountain to obtain flood insurance. Scherer–Mountain quoted a yearly premium of $220 for the $75,000 of coverage desired by the Carpenters. Scherer–Mountain also told the Carpenters that further paperwork was necessary before it could issue a permanent policy. According to Scherer–Mountain, it explained to the Carpenters that all applications were subject to approval by the NFIP.

On the closing date, the Carpenters paid $220 to Scherer-Mountain to secure a flood insurance policy on their home. Scherer–Mountain accepted this payment and gave the Carpenters a copy of the flood insurance application, which

defendant Mountain had signed and completed. The application stated that the Carpenters were requesting coverage of $75,000 with an annual premium of $220. The application also noted that the policy period for the insurance applied for was from October 28, 1993 to October 28, 1994. Several months after the Carpenters applied for the policy, Scherer–Mountain discovered that the Carpenters' property was located in a flood area requiring a higher annual premium for the same level of coverage. Scherer–Mountain informed the Carpenters that the annual premium was $7,000 and not the $220 they had paid in 1993. The $7,000 premium was apparently the amount that Scherer–Mountain should have quoted when the Carpenters initially requested flood insurance coverage.

After Scherer–Mountain informed the Carpenters of the correct premium, the Carpenters filed their lawsuit in October 1994. The complaint alleged causes of action for negligence, misrepresentation, and breach of contract, as well as a cause of action entitled "detrimental reliance." The gravamen of the Carpenters' allegations was that Scherer–Mountain negligently and/or fraudulently quoted a $220 premium for $75,000 in flood insurance coverage when the $220 premium actually entitled them to only $3,700 in coverage. If not for the erroneous insurance quote, the Carpenters claim that they would not have purchased the insurance and would not have proceeded with closing their contract to purchase the property. In 1997, during the pendency of this case, a flood that caused $15,000 in uninsured losses to the Carpenters occurred.

After the Carpenters commenced their lawsuit, Scherer–Mountain filed a third-party complaint against the commissioners. The third-party complaint alleged that the commissioners had failed to devise, implement, and enforce programs required of them by the NFIP. As a result, Scherer–Mountain alleged that the commissioners were liable for any damages suffered by the Carpenters.

Scherer–Mountain moved for summary judgment on the Carpenters' complaint. The commissioners also moved for summary judgment on Scherer–Mountain's third-party complaint, claiming that they were immune from liability under R.C. Chapter 2744. The trial court granted the commissioners' summary judgment motion, finding that the commissioners were immune from liability under R.C. 2744.02(A)(1) and R.C. 2744.03. The trial court also granted Scherer–Mountain's motion, finding that the Carpenters could establish neither negligence, misrepresentation, nor breach of contract as a matter of law. Both the Carpenters and Scherer–Mountain appealed.

## II

The Carpenters' assignment of error contends that the trial court erroneously granted summary judgment to Scherer–Mountain. When reviewing a grant of summary judgment, we apply the same standard used by the trial

court, affording no deference to the trial court's decision. *Evans v. S. Ohio Med. Ctr.* (1995), 103 Ohio App.3d 250, 253, 659 N.E.2d 326, 328; *Karmasu v. Hughes* (1995), 100 Ohio App.3d 434, 436, 654 N.E.2d 179, 180. Summary judgment under Civ.R. 56(C) is appropriate when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, when viewed most strongly in favor of the nonmoving party, that reasonable minds can come only to a conclusion in favor of the moving party. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. To survive summary judgment, the nonmoving party must produce evidence showing that a genuine issue of fact exists, including any issue for which the nonmoving party bears the burden of proof. See Civ.R. 56(E); see, also, *Mitseff*, 38 Ohio St.3d at 115, 526 N.E.2d at 801–802. In determining whether a triable issue of fact exists, a court should not pass upon the credibility of witnesses or weigh the relative value of their testimony. *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 243, 659 N.E.2d 317, 321–322. For ease of analysis, we will review the trial court's grant of summary judgment by looking at each cause of action pleaded in the Carpenters' complaint.[1]

## A

The Carpenters' complaint alleged a breach-of-contract claim against Scherer–Mountain arising out of an alleged written agreement to provide flood insurance. The complaint alleged the existence of "a written agreement between the plaintiffs and Richard C. Mountain and Scherer–Mountain Insurance that the latter would provide flood insurance * * * in the amount of $75,000 * * * and that the cost of said insurance would be [a] $220.00 annual premium." The complaint further alleged that Scherer–Mountain breached this agreement by failing to provide this insurance.

Significantly, none of the parties in this case has included a copy of any flood insurance policy issued by Scherer–Mountain to the Carpenters. Scherer–Mountain argues that there was no contract at all because it only gave the

---

1. The Carpenters' brief to this court did not cite a single case or statute in support of their appeal and consists largely of conclusory assertions. An appellate court may properly disregard any assignment of error that is unsupported by any citations to case law or statutes. See *Meerhoff v. Huntington Mtge. Co.* (1995), 103 Ohio App.3d 164, 169, 658 N.E.2d 1109, 1113; *State ex rel. Jackson Cty. Dept. of Human Serv. v. Strickland* (June 20, 1997), Jackson App. No. 96CA790, unreported, 1997 WL 360745. In the interests of justice, however, we will address the merits of the Carpenters' appeal.

Carpenters a "tentative quote" for a $220 insurance premium. Scherer–Mountain also argues that all flood insurance applications were subject to final approval by the NFIP before issuance.[2] However, the record contains an application for flood insurance that recites a $220 premium for $75,000 in coverage. It is also undisputed that the Carpenters paid $220 to Scherer–Mountain and that Scherer-Mountain noted on a receipt that the payment was for an "Annual Premium—Flood Insurance." The Carpenters point to this document as evidence of the flood insurance contract's existence. Even without an insurance policy in the record, we agree with the Carpenters that the application and their payment of $220 provide evidence that a flood insurance contract existed. Nevertheless, we hold that summary judgment was appropriate on this cause of action because no breach of contract occurred as a matter of law.

 The relationship between an insurer and an insured is contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh* (1984), 15 Ohio St.3d 107, 109, 15 OBR 261, 262–263, 472 N.E.2d 1061, 1062–1063. While an insurance contract may contain many terms, the basic arrangement is that an insurer agrees to compensate for loss on a specified subject by specified perils in exchange for an agreed premium paid by the insured. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537, paragraph one of the syllabus; see, also, *Tabler v. Allstate Ins. Co.* (Apr. 12, 1993), Washington App. No. 92CA7, unreported, 1993 WL 112565 (insurer need not pay anything to insured unless there is a contractual duty to do so). In this case, the Carpenters claim that Scherer–Mountain breached a flood insurance contract entered into for a policy period of October 28, 1993 to October 28, 1994. However, the Carpenters do not claim to have suffered any loss during that period of time. Thus, even if a valid contract of flood insurance existed between the parties as evidenced by the policy application, Scherer–Mountain's duty to pay for losses never matured. Although the Carpenters claim to have suffered an uncovered loss during a 1997 flood, the flood insurance policy application does not reflect coverage for any date beyond October 28, 1994. The Carpenters suffered no compensable loss during the coverage period. To the extent that the Carpenters' argument for breach focuses upon Scherer–Mountain's failure to pay for their 1997 flood loss, there is no breach as a matter of law. Summary judgment was appropriate on the Carpenters' cause of action based on breach of contract.

---

**2.** Scherer–Mountain raises two additional arguments to defeat the Carpenters' contract claim. Scherer–Mountain contends that (1) any alleged misrepresentations by Scherer–Mountain could not have induced the Carpenters to close the purchase of their real estate contract because they were already bound to purchase the property and (2) the Carpenters did not suffer damages proximately caused by reliance on any alleged misrepresentations. Although relevant to the Carpenters' tort claims, these arguments are irrelevant to any breach-of-contract analysis.

B

The Carpenters also allege a cause of action for negligence. The elements of a negligence claim are (1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of duty, (3) causation, and (4) damages. *Anderson v. St. Francis–St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 84, 671 N.E.2d 225, 227. Whether the defendant owed a duty to the plaintiffs presents us with a legal question that depends upon the foreseeability of the plaintiffs' injury. *Menifee v. Ohio Welding Products* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180–181, 472 N.E.2d 707, 710. An injury is foreseeable if a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Id.* In the insurance context, an action for negligence may be based upon an insurance agent's failure to procure insurance. *Minor v. Allstate Ins. Co.* (1996), 111 Ohio App.3d 16, 21, 675 N.E.2d 550, 554. An agent will be held liable if, "as a result of his or her negligent failure to perform that obligation [to procure insurance], the other party to the [insurance] contract suffers a loss because of a want of insurance coverage contemplated by the agent's undertaking." *Id.* If an insurance agent's negligence results in coverage less than that desired by an insured, the agent will be liable for the amount the insured would have received had the correct coverage been in place. *Id.* See, also, 3 Russ & Segalla, Couch on Insurance 3d (1997), Sections 46:46 and 46:71.

The Carpenters argue that Scherer–Mountain had a duty to use due care in procuring flood insurance at the level the Carpenters sought. We agree. Because Scherer–Mountain did business with the Carpenters as an insurance agent, it owed a duty to act diligently in obtaining the insurance desired. See *Minor, supra,* 111 Ohio App.3d at 21, 675 N.E.2d at 554. However, even if we assume that this duty existed and that Scherer–Mountain breached it, summary judgment on the negligence cause of action remains appropriate because the Carpenters have not established the elements of causation and damages. In an action based upon an agent's failure to secure proper insurance, the proper measure of damages is the amount that would have been due to the insured under the policy had the correct insurance been obtained. *Minor,* 111 Ohio App.3d at 21, 675 N.E.2d 550; 3 Couch on Insurance 3d, *supra,* at Section 46:74. Further, the causation element requires a plaintiff to establish that he would not have suffered a loss but for the insurance agent's negligence. *Id.* In this case, the flood insurance policy identified by the Carpenters was effective, if at all, from October 28, 1993 to October 28, 1994. The Carpenters suffered no flood loss during that period. In their brief to this court, the Carpenters' only argument for damages states that Scherer–Mountain's "mishandling of the * * * flood insurance policy related directly to [the Carpenters'] damages, namely their loss

in the flood of 1997 and the resulting effect on the future marketability of the residence." Thus, the only apparent damages alleged by the Carpenters relate to occurrences *after* their flood insurance policy expired. Even if Scherer–Mountain was negligent in procuring a flood insurance policy with less coverage than the Carpenters sought, there is no cognizable claim for damages because the Carpenters suffered no loss during the term of the policy. Summary judgment was therefore appropriate with respect to the Carpenters' cause of action for negligence.

## C

The Carpenters' complaint also contains separate causes of action for misrepresentation and detrimental reliance, which apparently allege both intentional and negligent misrepresentation by Scherer–Mountain.[3] The gist of these causes of action is that Scherer–Mountain intentionally, recklessly, or negligently misstated the cost of a flood insurance premium that would provide a flood insurance policy with coverage limits of $75,000. We hold that summary judgment was inappropriate on these causes of action, as genuine issues of material fact remain.

The elements of a cause of action for intentional misrepresentation are as follows:

"(a) a representation or, where there is a duty to disclose, concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying upon it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance." *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101,

---

3. As a matter of law, Ohio does not recognize a cause of action for detrimental reliance. See *Gottfried–Smith v. Gottfried* (1997), 119 Ohio App.3d 646, 650, 695 N.E.2d 1229, 1231. Detrimental reliance arises as an *element* of various causes of action (*e.g.* promissory estoppel, misrepresentation) but is not a cause of action unto itself. *Id.* However, when reading the Carpenters' complaint in context, it appears that their misnamed cause of action for "detrimental reliance" is simply a cause of action for negligent misrepresentation. See *Thoma Opticians, Inc. v. Fifth Third Bank* (June 5, 1998), Hamilton App. No. C–970611, unreported, 1998 WL 295629 (construing a cause of action for "detrimental reliance" as one for negligent misrepresentation).

paragraph two of the syllabus; *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 501–502, 462 N.E.2d 407, 408–409.

■ The existence of fraud is generally a question of·fact. *Kungle v. Equitable Gen. Ins. Co.* (1985), 27 Ohio App.3d 203, 206, 27 OBR 242, 245–246, 500 N.E.2d 343, 347–348.

■ A distinct cause of action for negligent misrepresentation lies against a party "who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions * * * if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 837; see, also, *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.* (1996), 115 Ohio App.3d 137, 149, 684 N.E.2d 1261. To be actionable, the negligent misrepresentation must result in the plaintiff's pecuniary loss caused by justifiable reliance on the information. *Leal v. Holtvogt* (1998), 123 Ohio App.3d 51, 62, 702 N.E.2d 1246. An insurance agent will be liable for false and fraudulent representations that the insured has relied upon to his damage. *Kungle,* 27 Ohio App.3d at 206, 27 OBR at 242, 245–246, 500 N.E.2d at 347–348.

Scherer–Mountain first argues that the Carpenters are unable to establish the "false statement" element as a matter of law. In its answer to the Carpenters' complaint, Scherer–Mountain admitted that it misquoted the annual premium for a $75,000 insurance policy at $220 when it was actually $7,000. While Scherer–Mountain admits this mistake, it argues that this was not an actionable false statement, noting that it gave the Carpenters only a "tentative quote" for flood insurance. Therefore, Scherer–Mountain maintains that it never actually represented that a $220 premium could secure a $75,000 flood insurance policy. Scherer–Mountain's argument in this regard is insufficient to justify summary judgment. The Carpenters have disputed Scherer–Mountain's assertion that the premium quote was tentative. In their depositions and in their affidavit in opposition to summary judgment, the Carpenters assert that there was nothing tentative about Scherer–Mountain's quote. According to the Carpenters, Scherer–Mountain represented that $220 was the *actual* quote for a $75,000 flood insurance policy. Further, the Carpenters presented summary judgment evidence that Scherer–Mountain accepted payment of $220 for what they believed to be a $75,000 flood insurance policy. In light of these contentions by the Carpenters, there remains a genuine issue of fact of whether Scherer–Mountain negligently or intentionally misrepresented the price of flood insurance to the Carpenters.

Scherer–Mountain also attempts to defend summary judgment in its favor by arguing that the Carpenters cannot prove materiality or justifiable reliance as a matter of law. Scherer–Mountain contends that its insurance quote was not material and that the Carpenters could not have relied to their detriment on it because (1) they were obligated to purchase the Proctorville property regardless of whether they secured flood insurance and (2) it was only a tentative quote. These are improper bases on which to grant summary judgment to Scherer–Mountain.

As we noted above, the issue of whether the insurance quote given by Scherer–Mountain was tentative is disputed by the Carpenters. Thus, whether the Carpenters could have reasonably relied upon the quote when purchasing insurance from Scherer–Mountain is not an issue we can resolve at the summary judgment stage.

■ We also reject Scherer–Mountain's arguments regarding the Carpenters' obligation to purchase the Proctorville property regardless of whether the insurance premium quote was accurate. Scherer–Mountain seeks to dispel the notion that the Carpenters would not have purchased the property had they known that the actual cost of flood insurance was $7,000 per year. Because the Carpenters already had a binding real estate contract before they approached Scherer–Mountain about buying flood insurance, Scherer–Mountain argues there could be neither materiality nor justifiable reliance associated with its mistaken insurance quote. However, the Carpenters dispute Scherer–Mountain's argument. The Carpenters' depositions indicate that purchasing flood insurance was a condition of obtaining their loan; in turn, obtaining the loan was a condition to the real estate contract closing. Ordinarily, we would decide the meaning of the Carpenters' loan contract with their mortgage lender as a matter of law and determine whether the agreement was actually conditioned on the purchase of flood insurance. However, the parties have not included the loan agreement in the record. Thus, the Carpenters have raised a genuine issue concerning reliance by arguing that they would not have proceeded with the closing if they had known that the correct flood insurance premium was $7,000. If the Carpenters could not secure flood insurance at this price, they may not have been able to obtain the loan. In turn, their failure to obtain a loan would have prevented the real estate contract from closing. Instead, the Carpenters received a flood insurance quote that was affordable and enabled them to obtain the loan from National City, which led them to proceed with the closing. The law of misrepresentation protects a plaintiff's interest in "formulating business judgments without being misled by others into making unwise decisions which result in financial loss." *Davidson v. Hayes* (1990), 69 Ohio App.3d 28, 31, 590 N.E.2d 18, 20, citing *Miles v. Perpetual S. & L. Co.* (1979), 58 Ohio St.2d 97, 99, 12 O.O.3d 108, 109–

110, 388 N.E.2d 1367, 1368–1369. Whether Scherer–Mountain made misrepresentations that led to an unwise decision by the Carpenters is an issue on which reasonable minds could reach different conclusions. We therefore sustain the Carpenters' assignment of error to the limited effect of reinstating their causes of action for misrepresentation.

### III

Scherer–Mountain's assignment of error challenges the trial court's determination that the commissioners are immune from liability on the third-party complaint. Scherer–Mountain contends that the commissioners failed to devise, implement, and enforce programs in compliance with the NFIP. Because the commissioners undertook the responsibility of joining the NFIP, Scherer–Mountain argues that the commissioners had a duty to implement that decision in a nonnegligent manner. Scherer–Mountain's contentions are meritless.

In granting summary judgment on Scherer–Mountain's third-party complaint, the trial court found that the commissioners were entitled to sovereign immunity under R.C. 2744.02(A)(1). The availability of immunity is a question of law properly determined by the court prior to trial. *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862, 869; *Hall v. Ft. Frye Local School Dist. Bd. of Edn.* (1996), 111 Ohio App.3d 690, 694, 676 N.E.2d 1241, 1243–1244. Accordingly, we review *de novo* a trial court's summary judgment decision on immunity grounds. *Lutz v. Hocking Technical College* (May 18, 1999), Athens App. No. 98CA12, unreported, 1999 WL 355187.

As a political subdivision, the commissioners are entitled to the immunities from tort liability provided in R.C. Chapter 2744.[4] This chapter sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610, 614–615. First, R.C. 2744.02(A)(1) provides a political subdivision with a general grant of immunity from liability for acts or omissions connected with its governmental or proprietary functions. *Hill v. Urbana* (1997), 79 Ohio St.3d 130, 133, 679 N.E.2d 1109, 1112. The statute states:

---

**4.** Scherer–Mountain's third-party complaint named the commissioners in their official capacity, and not the county itself, as a defendant. However, this technicality does not render political-subdivision immunity inapplicable. A claim against the commissioners is, in effect, a claim against the county itself. Thus, the commissioners are entitled to political-subdivision status in the same manner as the county itself. See *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105, 107–108 (rejecting argument that a county-created department of human services was not a political subdivision for purposes of R.C. Chapter 2744).

"For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."

By its own terms, R.C. 2744.02(A)(1) is not absolute. The general grant of immunity is subject to the exceptions contained in R.C. 2744.02(B), which provide the second tier of analysis. R.C. Chapter 2744.02(B) states:

"Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows * * *."

In turn, R.C. 2744.02(B)(1) through (B)(5) lists the circumstances under which a political subdivision is potentially liable in tort. Even if one of the exceptions removes the political subdivision's general grant of immunity, the third tier of the analysis requires an examination of R.C. 2744.03. A political subdivision may reinstate its freedom from liability if it successfully argues that one of the defenses or immunities in R.C. 2744.03 applies. *Cater,* 83 Ohio St.3d at 28, 697 N.E.2d at 614–615.

Scherer–Mountain contends that the exception contained in R.C. 2744.02(B)(2) removes the commissioners' cloak of sovereign immunity. This statute provides:

"Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivision." [5]

While the R.C. 2744.02(B)(2) exception allows political subdivision liability for negligence in connection with proprietary functions, there is no such exception for governmental functions. *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107. Thus, the applicability of R.C. 2744.02(B)(2) to the commissioners' conduct in this case turns on whether their participation in the NFIP was a governmental function or a proprietary one. We hold that the commissioners' participation was a governmental function, rendering R.C. 2744.02(B)(2) inapplicable to lift the general grant of immunity to political subdivisions.

---

**5.** The exception regarding R.C. 3746.24 is inapplicable here.

R.C. 2744.01(C)(1) defines "governmental function" as follows:

" [A] function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:

"(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;

"(b) A function that is for the common good of all citizens of the state;

"(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section."

R.C. 2744.01(C)(2) contains a nonexclusive list of twenty-three governmental functions within the meaning of the statute. None of the functions listed falls .squarely within the commissioners' participation in the NFIP.[6]

On the other hand, R.C. 2744.02(G)(1) defines "proprietary function" as follows:

"[A] function of a political subdivision that is specified in division (G)(2) of this section or that satisfies both of the following:

"(a) The function is not one described in division (C)(1)(a) or (b) of this section and is not one specified in division (C)(2) of this section;

"(b) The function is one that promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons."

R.C. 2744.01(G)(2) lists five examples of proprietary functions, none of which pertain to the commissioners' participation in the NFIP. Nevertheless, Scherer–Mountain argues that the commissioners' participation in the NFIP was a proprietary function. Scherer–Mountain contends that the commissioners' participation in the NFIP fails to satisfy R.C. 2744.01(C)(1)'s definition of governmental function because (1) flood insurance is an activity customarily engaged in by nongovernmental persons and (2) the NFIP was not imposed upon the Commissioners as an obligation of sovereignty. Because the NFIP participation cannot be construed as a governmental function, Scherer–Mountain argues that it therefore meets the criteria for a proprietary function. We disagree.

▪▪▪▪ The statutory definition of a "governmental function" includes any function that "promotes or preserves the public peace, health, safety, or welfare"

---

6. R.C. 2744.01(C)(2)(r) lists "flood control measures" as a governmental function. Because we conclude participation in the NFIP is a governmental function under R.C. 2744.01(C)(1), we need not decide whether the NFIP is a flood-control measure.

and that "involves activities that are not * * * customarily engaged in by nongovernmental persons." R.C. 2744.01(C)(1)(c). While Scherer–Mountain does not dispute that participation in the NFIP promotes or preserves the public welfare, it contends that the NFIP is an activity "customarily engaged in by nongovernmental persons" and must therefore be a proprietary function. This argument, however, mischaracterizes what a political subdivison's participation in the NFIP entails. Scherer–Mountain argues simply that flood insurance is a traditionally nongovernmental activity because insurance has always been "carried out by private industry." However, a political subdivision participating in the NFIP has responsibilities distinct from those of private insurers. Under the NFIP, property owners may secure flood insurance only if a local governmental body has adopted adequate land-use controls found to be satisfactory by the Federal Emergency Management Agency ("FEMA"). See Section 4022, Title 42, U.S.Code. Before a political subdivision may enter the NFIP, it must satisfy a number of prerequisites, including appointing a local flood plan administrator or agency. Section 59.22(a) and (b), Title 44, C.F.R. Additionally, a political subdivision that joins the NFIP must satisfy several criteria before flood insurance may be sold within it. Section 60.1, Title 44, C.F.R. These requirements consist primarily of a political subdivision's implementation of minimum "flood plain management regulations," which include an adequate permit and inspection system designed to ensure that development in flood-prone areas is reasonably safe from potential flood damage. See, generally, Section 60.3, Title 44, C.F.R. The multitude of duties imposed upon a political subdivision under the NFIP reveals that the commissioners were not engaged in merely a program of "carrying out insurance." The NFIP is essentially a government program aimed at regulating when issuance of flood insurance will be allowed. Rather than participating in the business of insuring against losses, a political subdivision's role under the NFIP is to implement a regulatory scheme related to the issuance of flood insurance, which includes requiring permits and various development specifications for proposed building in a floodplain. Regulation of this type is a governmental function.

While not directly on point, R.C. 2744.01(C)(2)(p) is instructive. This provision defines a governmental function to include "[t]he provision or nonprovision of inspection services of all types, including, but not limited to, inspections in connection with building, zoning, sanitation, fire, plumbing, and electrical codes, and the taking of actions in connection with those types of codes, including, but not limited to, the approval of plans for the construction of buildings or structures and the issuance or revocation of building permits."

The crux of Scherer–Mountain's third-party complaint is that the commissioners failed to timely carry out two "mandatory" NFIP requirements: (1) hiring a

flood plan administrator, which the commissioners did not do until 1993, and (2) implementing a permit program to scrutinize development in flood-prone areas. See Section 59.22(b), Title 44, C.F.R. (requiring appointment of a local flood-plan official) and Section 60.3, Title 44, C.F.R. (listing minimum requirements for floodplain regulations that political subdivision must implement). Thus, Scherer–Mountain's allegations challenge only the commissioners' failure to implement permit and inspection programs that would have prevented the carpenters' home from being built in a floodplain, at least in the manner it was ultimately constructed. These functions are akin to the "inspection services" defined as governmental functions in R.C. 2744.01(C)(2)(p). A political subdivision participating in the NFIP undertakes several inspection-related duties, including the responsibility to issue permits, inspect areas of potential development, require certain minimum standards for development in floodplains, and adjust development and construction standards in response to any new flood data. See, generally, Section 60.3, Title 44, C.F.R. The NFIP duties resemble the actions a political subdivision takes when enforcing any building or zoning code and are therefore classified accurately as governmental functions. See R.C. 307.37(A)(2) (granting counties the power to issue building code regulations for participation in NFIP).

Ohio case law prior to R.C. Chapter 2744 illustrating the distinction between governmental and proprietary functions bolsters our conclusion that the commissioners' participation in the NFIP was a governmental function. The Ohio common-law rule extended the state's sovereign immunity to counties as political subdivisions of the state. *Schenkolewski v. Cleveland Metroparks Sys.* (1981), 67 Ohio St.2d 31, 33, 21 O.O.3d 19, 20–21, 426 N.E.2d 784, 785–786, citing *Schaffer v. Franklin Cty. Veterans Memorial Bd. of Trustees* (1960), 171 Ohio St. 228, 12 O.O.2d 343, 168 N.E.2d 547. The governmental immunity of political subdivisions, however, depended upon whether a function was governmental or proprietary in nature. *Id.* "In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or *preserving the peace and health of citizens and protecting their property*, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality * * * is entitled to that immunity from liability which is enjoyed by the state itself." (Emphasis added.) *Wooster v. Arbenz* (1927), 116 Ohio St. 281, 284–85, 156 N.E. 210, 211; see, also, *Moloney v. Columbus* (1965), 2 Ohio St.2d 213, 218, 31 O.O.2d 447, 449–450, 208 N.E.2d 141, 144–145; *Broughton v. Cleveland* (1957), 167 Ohio St. 29, 31, 4 O.O.2d 1, 2, 146 N.E.2d 301, 303–304; *Hack v. Salem* (1963), 174 Ohio St. 383, 387, 23 O.O.2d 34, 36, 189 N.E.2d 857, 859–860. On the other hand, a political subdivision performs proprietary functions "for the particular benefit of the [political subdivision] and

its inhabitants, as distinguished from those things in which the whole state has an interest." *Arbenz*, 116 Ohio St. at 284, 156 N.E. at 211. Thus, the rationale behind distinguishing governmental from proprietary functions "is that in performing the former a [political subdivision] acts as the agent of the state in the exercise of sovereign powers" while proprietary functions are "performed in the pursuit of private or corporate duties for the particular benefit of the [political subdivision] and its inhabitants." *Schenkolewski*, 67 Ohio St.2d at 36–37, 21 O.O.3d at 23, 426 N.E.2d at 788.

▮ When it undertook participation in the NFIP, the commissioners acted in the exercise of sovereign interests and therefore acted in a governmental capacity. The NFIP is designed to provide for the welfare of citizens and protect against property losses from flooding. Although the commissioners' participation in the NFIP benefits local interests, it is also the type of public safety and welfare measure in which the state has an interest as sovereign. Indeed, starting in 1991, Ohio's Chief of the Division of Water became responsible for reviewing floodplain management plans for each municipal corporation or county for compliance with the NFIP. R.C. 1521.18. Because the commissioners' participation in the NFIP is properly characterized as a governmental function, the exception to political subdivision immunity in R.C. 2744.02(B)(2) is inapplicable. In the absence of an exception for this type of governmental function, the commissioners' immunity from liability remains intact.

Even if the commissioners engaged in a governmental function, however, Scherer–Mountain argues that immunity cannot be applied because their actions were not discretionary in nature. When the commissioners enacted a resolution to participate in the NFIP, Scherer–Mountain notes, they became subject to the various requirements imposed by the federal regulations governing the program. Scherer–Mountain contends that immunity is afforded only for governmental functions "characterized by the exercise of a high degree of discretion." Thus, while the commissioners would be immune from liability for making the policy decision *not* to join the NFIP, they are liable for failing to properly implement their duties under the program after making the decision to join. This argument is also meritless.

▮ Scherer–Mountain's argument attempts to draw a distinction between policymaking and implementation. Prior to the General Assembly's enactment of R.C. Chapter 2744, the Ohio Supreme Court partially abrogated sovereign immunity for both cities and counties, drawing a distinction between basic policy functions and implementation functions. The Supreme Court held that no tort action could lie against a county for acts or omissions involving executive or planning functions or the making of a basic policy decision characterized by a high degree of official judgment or discretion. *Zents v. Summit Cty. Bd. of*

*Commrs.* (1984), 9 Ohio St.3d 204, 9 OBR 516, 459 N.E.2d 881, syllabus. However, the Supreme Court also held that "once the decision has been made to engage in a certain activity or function, a county will be held liable * * * for the negligence of their employees and agents in the performance of their activities." *Id.*; see, also, *Enghauser Mfg. Co. v. Eriksson Engineering Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, paragraph two of the syllabus (illustrating the identical rule for municipal corporations). While Scherer–Mountain seizes upon this distinction in attempting to impose liability on the commissioners, the distinction is no longer viable. Following the Supreme Court's abrogation of sovereign immunity for counties and municipal corporations, the General Assembly reinstated sovereign immunity when it enacted R.C. Chapter 2744. Significantly, R.C. Chapter 2744 distinguishes between governmental and proprietary functions rather than between discretionary and ministerial ones. See *Blankenship v. Enright* (1990), 67 Ohio App.3d 303, 309–10, 586 N.E.2d 1176, 1179–1180 (noting that R.C. Chapter 2744 created a substantial change in the law regarding sovereign immunity, including reinstatement of governmental and proprietary distinction). R.C. Chapter 2744 defines "governmental function" without any reference to whether a function is discretionary or nondiscretionary. *Feitshans v. Darke Cty.* (1996), 116 Ohio App.3d 14, 27, 686 N.E.2d 536, 544–545; see, also, *Blankenship*, 67 Ohio App.3d at 306, 586 N.E.2d at 1177–1178 (identifying difference in immunity analysis between a "governmental versus proprietary concept" and a "discretion versus ministerial concept"). The character of a governmental function as discretionary or nondiscretionary is relevant only where a plaintiff initially demonstrates that the challenged government function falls under an exception to the general immunity granted by R.C. 2744.02(A)(1). See the discussion that follows and *Feitshans*, 116 Ohio App.3d at 27, 686 N.E.2d at 544–545. Except as provided in R.C. 2744.02(B)(1), (3), (4), and (5), none of which are applicable here, political subdivisions retain their cloak of immunity concerning governmental functions. *Wilson, supra,* 70 Ohio St.3d at 452, 639 N.E.2d at 107. Thus, even if a political subdivision acts negligently or recklessly in implementing a policy decision, it will remain immune from liability absent an exception. As we have already noted, the commissioners' implementation of NFIP falls under no immunity exception, rendering Scherer–Mountain's discretionary or nondiscretionary distinction meaningless.

As an additional ground for summary judgment, the trial court also held that the commissioners were immune from liability because their alleged failure to implement and enforce the NFIP programs was a discretionary action falling within the parameters of R.C. 2744.03. Presumably, the trial court relied upon R.C. 2744.03(A)(3), which grants immunity to a political subdivision for acts or omissions "within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the

office or position of the employee." However, we have no occasion to review this determination, as it was unnecessary to the trial court's decision. The R.C. 2744.03 immunities are irrelevant unless a plaintiff has first identified an applicable R.C. 2744.02(B) exception to a political subdivision's general grant of immunity. *Feitshans, supra*, 116 Ohio App.3d at 28, 686 N.E.2d at 545; *Miller v. Wadsworth City Schools* (1994), 93 Ohio App.3d 278, 281, 638 N.E.2d 166, 168; see, also, *Cater v. Cleveland, supra*, 83 Ohio St.3d at 28, 697 N.E.2d at 614–615 (immunity can be *reinstated* under applicable provisions of R.C. 2744.03 after an exception established under R.C. 2744.02[B]). Because Scherer–Mountain identified no applicable R.C. 2744.02(B) exception to political subdivision immunity, there is no reason to examine whether the commissioners' conduct is protected by R.C. 2744.03.

In a final argument that the commissioners are not immune from liability, Scherer–Mountain invokes R.C. 2744.09(E). This statute provides that R.C. Chapter 2744 is inapplicable to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States." Based upon this provision, Scherer–Mountain argues that the R.C. 2744.02(A)(1) immunity cannot apply because its action is based upon the commissioners' alleged failure to comply with the NFIP, a federal program governed by federal law. This contention is meritless because the third-party complaint is not a civil claim based upon federal law. While Scherer–Mountain alleges that the commissioners did not comply with their duties under the NFIP, the gravamen of the third-party complaint is that the commissioners negligently or recklessly failed to act and should be held responsible for any liability incurred by Scherer–Mountain. The third-party complaint is a state-law tort action and does not plead even one federal statute that the commissioners supposedly violated. Further, Scherer–Mountain has provided no authority for the proposition that violations under the NFIP give rise to an implied private cause of action. To the contrary, federal cases have noted that no private right of action exists for NFIP violations except in specifically delineated circumstances not implicated here. See, generally, *United States v. Parish of St. Bernard* (C.A.5, 1985), 756 F.2d 1116; *Mid–Am. Nat. Bank of Chicago v. First S.&L. Assn. of S. Holland* (C.A.7, 1984), 737 F.2d 638; *Hofbauer v. Northwestern Natl. Bank of Rochester, Minn.* (C.A.8, 1983), 700 F.2d 1197; *Arvai v. First Fed. S.&L. Assn.* (C.A.4, 1983), 698 F.2d 683.

Scherer–Mountain's assignment of error is overruled.

## IV

In sum, we affirm the trial court's judgment in part, reverse in part, and remand for proceedings consistent with this opinion. The Carpenters' assignment of error is sustained in part and overruled in part. The trial court erred in

awarding summary judgment to Scherer–Mountain on the Carpenters' causes of action for intentional and negligent misrepresentation. Scherer–Mountain is entitled to summary judgment, however, on the Carpenters' causes of action for negligence and breach of contract. We overrule Scherer–Mountain's assignment of error relating to its appeal of summary judgment to the commissioners on the third-party complaint. The commissioners are entitled to summary judgment on the grounds of political subdivision immunity.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

KLINE, P.J., and PETER B. ABELE, J., concur.