JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Caryn Groedel ("Groedel"), appeals the Shaker Heights Municipal Court's granting of judgment in favor of defendant-appellee, Kenneth Arsham, M.D. ("Arsham"). Finding no merit to the appeal, we affirm.
 {¶ 2} On June 14, 2004, Groedel entered into a contract with Arsham for a surgical procedure to be performed on July 2, 2004. Groedel was required to pay the surgical fee of $3,250 in advance. Under the agreement, if Groedel cancelled her surgery between seven and fourteen days before the scheduled date, she would be assessed one-half of the fee or $1,625. In addition, if she cancelled the procedure with less than one week's notice, she would be charged the full fee of $3,250. She did not pay the fee in advance, but nonetheless the surgery was scheduled.
 {¶ 3} Groedel maintains that on June 17, 2004 she called Arsham's office to cancel her July 2, 2004 appointment. Arsham contends that it was not cancelled until June 24, 2004. A notarized statement from his answering service indicates that *Page 2 
the only call received from Groedel was on June 24, 2004 to reschedule the surgery. There is no dispute that on June 24, 2004, she spoke with an assistant at Arsham's office to reschedule her procedure for August 13, 2004. At that time, Groedel claims that she gave Arsham's office her credit card information for the rescheduled appointment.[1] However, Groedel maintains that Arsham's office still charged her credit card $3,250 for the July 2, 2004 surgery, even though she cancelled it on June 17, 2004. Arsham later reimbursed Groedel $1,625 (one-half of $3,250) because she cancelled her procedure eight days prior to the surgery date.
 {¶ 4} In June 2005, Groedel filed suit against Arsham, alleging that he breached the contract when he refused to give her a full refund of $3,250. The trial judge issued a verdict in favor of Arsham, finding that Groedel voluntarily signed the contract with full knowledge of the cancellation and refund policy.
 {¶ 5} Groedel appeals, raising one assignment of error, in which she claims that the trial court erred in granting judgment in favor of Arsham. She argues that she has provided sufficient evidence to establish that the cancellation and refund policy was a penalty clause and not a clause providing for liquidated damages.
 {¶ 6} The cancellation and refund policy provides, in pertinent part: "[i]f you [Groedel] cancel your scheduled surgery between 7 and 14 days of the surgery date, *Page 3 
one half of the fee will be refunded. If the surgery is cancelled with less than one weeks [sic] notice, none of the fee will be refunded. If you wish to schedule, cancel or reschedule your surgery, please call the office at * * *." Groedel also argues that, because penalty clauses are unenforceable in Ohio, the cancellation and refund policy provision is unenforceable, and she is therefore entitled to a full refund of $3,250.
 {¶ 7} As a general rule in Ohio, "* * * parties are free to enter into contracts that contain provisions which apportion damages in the event of default. `The right to contract freely with the expectation that the contract shall endure according to its terms is as fundamental to our society as the right to write and to speak without restraint. Responsibility for the exercise, however improvident, of that right is one of the roots of its preservation.'" Lake Ridge Academy v.Carney (1993), 66 Ohio St.3d 376, 613 N.E.2d 183, quoting Blount v.Smith (1967), 12 Ohio St.2d 41, 231 N.E.2d 301.[2]
 {¶ 8} The complete freedom to contract, however, is not permitted in certain circumstances for public policy reasons, such as when stipulated damages constitute a penalty. "Punishment of a promisor for having broken his promise has *Page 4 
no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy." 3 Restatement of the Law 2d, Contracts (1981) 154, Section 356, Comment a.
 {¶ 9} "The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract." Lake Ridge, supra, citingGarrett v. Coast Southern Federal Savings Loan Assn. (1973), 9 Cal.3d 731, 108 Cal.Rptr. 845, 511 P.2d 1197. Accordingly, a penalty is designed to coerce performance by punishing nonperformance. Thus, its principal object is not compensation for the losses suffered by the nonbreaching party. Id.
 {¶ 10} However, parties to a contract may provide in advance for damages to be paid in the event of a breach, "as long as the provision does not disregard the principle of compensation." 3 Restatement of Contracts, supra, at 157. These damages are known as liquidated damages. See Lake Ridge, supra.
 {¶ 11} Whether a stipulated amount in a damages clause constitutes liquidated damages or a penalty is a question of law for the court to decide. Lake Ridge, supra. Therefore, we apply a de novo standard of review when evaluating this issue. See Cleveland Elec. Illum. Co. v.Pub. Util. Comm., 76 Ohio St.3d 521, 1996-Ohio-298, 668 N.E.2d 889. *Page 5 
 {¶ 12} In Samson Sales, Inc. v. Honeywell, Inc. (1984),12 Ohio St.3d 27, 465 N.E.2d 392, the Ohio Supreme Court set forth the following three-prong test to determine whether a damages provision should be upheld as liquidated damages:
 "Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof."
 {¶ 13} The reviewing court must step back and examine the damages provision in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced. See 3 Restatement of Contracts, supra, at 157.
 {¶ 14} In the instant case, the damages Arsham would incur as a result of a patient's failure to keep a surgical appointment are difficult to ascertain and prove. Because Arsham provided a variety of services, it would be difficult to determine the net loss he would sustain from a cancelled appointment. Furthermore, it is difficult for him to substitute a patient for the same surgery or procedure with less than two weeks notice because of the time needed to plan for recovery from the procedure. *Page 6 
Therefore, Arsham would be unable to calculate and prove the precise damages caused by Groedel's cancelled surgical procedure.
 {¶ 15} The second prong of the Samson Sales test focuses on whether the amount of the liquidated damages is unconscionable, unreasonable, or disproportionate in comparison to the "value of the subject contract" and the "probable consequences of the breach." Lake Ridge, supra. "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Id., citing Williams v. Walker-Thomas Furniture Co. (C.A.D.C. 1965), 121 U.S.App.D.C. 315, 350 F.2d 445. A contract is unconscionable if it did not result "from real bargaining between parties who had freedom of choice and understanding and ability to negotiate in a meaningful fashion." Id., citing Kugler v. Romain (1971), 58 N.J. 522,279 A.2d 640. The crucial question is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print* * * ?" Id., citingWilliams, supra.
 {¶ 16} The Estimated Surgical Expenses agreement as a whole is not unconscionable. There is no evidence of coercion or duress and the parties appear to have dealt with each other at arm's length, especially since Groedel is an attorney with over fourteen years of experience. The agreement is legible, written in plain *Page 7 
English, and is composed of a single page with the cancellation and refund provision printed in the same print size as the other clauses. Furthermore, there is no evidence to demonstrate that Groedel was pressured into signing an agreement, the terms of which she could not see or easily understand. Thus, we do not find that the contract was unconscionable.
 {¶ 17} Moreover, we find that the agreement as a whole was reasonable. The record demonstrates that Arsham's cancellation and refund policy was in place because of the variety of services he provided. His time was reserved for a specific procedure and when an appointment was cancelled, he would lose revenue from potential patients whom he could not accommodate because his time had already been reserved.
 {¶ 18} Finally, damages in the amount of one-half of the surgeon's estimated expenses are not disproportionate to the actual damages suffered by Arsham.
 {¶ 19} Because Arsham specifically reserved his time for Groedel's surgical procedure, it is not unreasonable to conclude that the potential missed appointments were equivalent to $1,625.
 {¶ 20} The third prong of the Samson Sales test is whether the "contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." The language in the Estimated Surgical Expenses agreement is so clear that we can only conclude that it *Page 8 
represents the intention of the parties. The relevant provision provides that if Groedel cancelled her appointment between seven and fourteen days before the scheduled date, she would be required to pay $1,625. If she cancelled the appointment with less than one week's notice, she would be charged the full contract price of $3,250. This clause appears above the signature line and in full-size print. Therefore, we have no reason to believe that the plain language of the cancellation and refund policy does not represent the parties' intent. Thus, the third prong of the Samson Sales test is also met.
 {¶ 21} Accordingly, we find that the cancellation and refund policy is not a penalty clause, but rather a valid liquidated damages clause.
 {¶ 22} Groedel also contends that Arsham's office committed fraud or malfeasance when it requested her credit card information for the August 13, 2004 surgical procedure, but used the information to charge her credit card for the prior July 2, 2004 procedure.
 {¶ 23} Groedel also argues that if Arsham's representations are not fraud, they should be considered an intentional misrepresentation. However, in Ohio, fraud and intentional misrepresentation possess the same elements. To maintain a fraud or intentional misrepresentation action, Groedel must establish that: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, *Page 9 
or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. Williams v. Aetna Fin. Co.,83 Ohio St.3d 464, 475, 1998-Ohio-294,700 N.E.2d 859, citing Cohen v. Lamko,Inc. (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. See, also, Carpenter v.Scherer-Mountain Insurance Agency (1999), 135 Ohio App.3d 316,733 N.E.2d 1196, citing Burr v. Stark Cty. Bd. of Commrs. (1986),23 Ohio St.3d 69, 491 N.E.2d 1101.
 {¶ 24} Groedel bases part of her fraud and intentional misrepresentation claims on testimony introduced at trial. However, she has failed to file a copy of the trial transcript.
 "The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See, also, State v. Skaggs (1978), 53 Ohio St.2d 162, 372 N.E.2d 1355. This principle is recognized in App.R. 9(B), which provides, in part, `* * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for *Page 10 
inclusion in the record * * *.'" Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197, 400 N.E.2d 384.
 {¶ 25} Moreover, if no transcript of the proceedings is available, App.R. 9(C) provides an alternative means for completing the record.Calabrese v. Zmijewski, Cuyahoga App. No. 86185, 2006-Ohio-2322. Groedel, however, failed to comply with this alternative. Therefore, "[i]n the absence of a complete and adequate record, a reviewing court must presume the regularity of the trial court proceedings and the presence of sufficient evidence to support the trial court's decision."Burrell v. Kassicieh (1998), 128 Ohio App.3d 226, 714 N.E.2d 442. Thus, we must presume regularity in the trial court's proceedings and we cannot consider Groedel's references to trial testimony. In reGuardianship of Muehrcke, Cuyahoga App. Nos. 85087 and 85183,2005-Ohio-2627.
 {¶ 26} In the instant case, other than providing a self-serving handwritten note, Groedel failed to produce any evidence that she cancelled her procedure on June 17, 2004. The only evidence in the record regarding a call from Groedel is a notarized statement from Arsham's answering service indicating that she called on June 24, 2004. In addition, there is no evidence that Arsham's office made any false statements related to the use of Groedel's credit card or made any representations with the intent to mislead her. The record demonstrates that Groedel's credit card was initially charged $3,250 and that she was later reimbursed $1,625, which left a *Page 11 
charge of $1,625 on her credit card. Moreover, there is no evidence of injury to Groedel, since she was required to pay $1,625 under the agreement for the late cancellation of her scheduled surgical procedure.
 {¶ 27} Therefore, we presume the regularity of the trial court's proceedings and find sufficient evidence to support the trial court's decision. Thus, we find no proof of fraud or intentional misrepresentation.
 {¶ 28} Accordingly, the sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Shaker Heights Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J. and MARY J. BOYLE, J., CONCUR.
[1] This appointment was later cancelled two weeks prior to August 13, 2004. The cancellation of the August 13, 2004 appointment is not in dispute, as both parties agree that she was not charged for that appointment.
[2] In Lake Ridge, defendant Carney failed to cancel his son's school enrollment by the date specified in the contract. The Ohio Supreme Court held that Lake Ridge's cancellation clause provided for valid liquidated damages, and the Court affirmed the judgment against Carney for the full tuition balance of $6,240. Id. *Page 1