DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Washington County Common Pleas Court summary judgment in favor of Thomas and Nancy Vadakin, defendants below and appellees herein.
 {¶ 2} John and Prudence Boulton, plaintiffs below and appellants herein, raise the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES, THOMAS C. VADAKIN AND NANCY VADAKIN, *Page 2 
DISMISSING THE CLAIM OF APPELLANTS FOR FRAUDULENT CONCEALMENT OF DEFECTS IN THE HOME LOCATED AT 122 MEADOW LANE, MARIETTA, OHIO WHERE THE EVIDENTIARY MATERIALS PRESENTED SUPPORTED A REASONABLE INFERENCE THAT APPELLEES HAD PRIOR KNOWLEDGE OF THE EXISTENCE OF EXTENSIVE DEFECTS AND CONCEALED THE SAME FROM APPELLANTS."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT AS FRAUDULENT MISREPRESENTATION BY APPELLEES MAY REASONABLY BE INFERRED WHEN NUMEROUS AND EXTENSIVE DEFECTS EXIST IN THE HOME LOCATED AT 122 MEADOW LANE, MARIETTA, OHIO AND APPELLEES, AS SELLERS, DELIVERED TO APPELLANTS, AS BUYERS, A RESIDENTIAL DISCLOSURE FORM WHICH FAILED TO DISCLOSE SUCH DEFECTS."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THE PURCHASE AGREEMENT FOR THE HOME LOCATED AT 122 MEADOW LANE, MARIETTA, OHIO INCLUDED A SPECIFIC REQUIREMENT OF SELLERS TO DISCLOSE TO THE BUYERS ALL DEFECTS IN THE HOUSE OF WHICH THEY ARE AWARE AS FAILURE BY SELLERS TO MAKE SUCH DISCLOSURE CONSTITUTES A BREACH BY SELLERS OF THE PURCHASE AGREEMENT."
 {¶ 3} In the fall of 2000, appellees listed their home for sale and relocated to the Columbus area. In August 2003, appellants purchased the home from appellees. Before the purchase, appellants had the unimpeded opportunity to view and to inspect the home. The purchase contract stated that appellants had inspected the property and had accepted it in its present condition, save for certain exceptions contained in a home inspection report. The purchase contract also contained a general *Page 3 
home/structural inspection addendum that stated that appellants would obtain both a general home and a structural inspection. The addendum further provided:
 "This contingency shall terminate at the above predetermined deadline unless the Buyer (or Buyer's agent) delivers to the Seller (or Seller's agent) a written statement listing the specific existing deficiencies and corrections needed, together with a copy of the inspection. The Seller may, at the Seller's option, within 10 business days after delivery of the report, furnish the Buyer with written statement that the condition shall be remedied before the date of the settlement. If the Seller does not elect to make the repairs, or if the Seller makes a counteroffer, the buyer shall have 5 business days to respond to the counter-offer or remove the contingency and take the property in its present condition or this contract shall become void and earnest deposit shall be returned to buyer."
 {¶ 4} Appellants hired a home inspector who prepared a written home inspection report. Appellants, however, did not deliver to appellees within ten days of the purchase agreement, or at any time prior to the closing date, a written statement that listed any deficiencies.
 {¶ 5} In the fall of 2003, appellants moved into the home. Shortly thereafter, appellants discovered various problems, including: (1) improperly installed or nonexistent drainage that caused flooding; (2) leaking gas line; (3) improperly wired exterior lighting; (4) exterior dry rot on shutters and french doors; (5) malfunctioning air conditioning system; (6) damaged roof; (7) faulty electrical wiring; (8) improperly functioning attic exhaust fan; and (9) failure of the sun room glass paneling insulation.
 {¶ 6} On December 4, 2006, appellants filed their complaint against both the appellees and their home inspector. Appellants alleged that appellees fraudulently concealed known defects and fraudulently misrepresented the condition of the home.
 {¶ 7} Subsequently, appellees requested summary judgment and argued that *Page 4 
the doctrine of caveat emptor barred appellants' claims. Appellees filed separate affidavits asserting that they had no knowledge of any of the claimed defects and that they did not conceal any defects.
 Appellants memorandum contra argued that appellees concealed defects, and that genuine issues of material fact remained as to whether appellants could have discovered the defects upon reasonable inspection, whether appellees failed to disclose known defects, and whether appellees fraudulently concealed the defects.[1] *Page 5 
[EDITORS' NOTE: THIS PAGE CONTAINED FOOTNOTES.] *Page 6 
 {¶ 8} Appellants further asserted that appellees (1) painted the window shutters and french doors to conceal the dry-rot, (2) attempted to repair the electrical system to mask the true problems, and (3) patched the roof to conceal leakage or other damage. Mr. Boulton averred in an affidavit that many of the defects were hidden or concealed and not readily discoverable upon a reasonable inspection.
 {¶ 9} The parties submitted many evidentiary materials that addressed the alleged defects. In his deposition, Mr. Vadakin stated that: (1) he checked a large number of the outlets and found them to be properly grounded; (2)in 1999, he painted the shutters and the wood did not appear to be rotten; (3)in 1999 he painted the exterior french doors and did not discover dry rot; (4)in 1997 Murray Glass replaced eight panes of glass in the sun room and that condensation between the panes sometimes caused a foggy appearance; (5) he and his wife installed a window air conditioning unit because his wife likes to sleep in a cold room; and (6) he did not conceal the outside air conditioning unit with bricks and the bricks around the air conditioner were present when they purchased the house.
 {¶ 10} Mr. Boulton stated in his deposition that (1) before closing, he suspected that the Thermopane panels in the sunroom had some problems; (2) the home inspector estimated that the central air conditioning unit is 25 years old and that the typical life is 15 to 18 years; and (3)he did not open the lid to the grill, but if he had, he would have seen that it was not in "great shape." Boulton admitted that he could have *Page 7 
discovered the dry rot if he had looked, but claimed that appellees concealed the defect by painting over it. Appellants' electrical expert, Michael L. Stocky, stated that he inspected the home in August 2005 and found numerous wiring problems not observable to the naked eye and that could not be found upon a reasonable inspection.
 {¶ 11} On April 11, 2007, the trial court granted appellees summary judgment and concluded that appellants agreed to take the home "as is," and, therefore, have no cause of action against appellees, except for fraud. The court also concluded that appellants produced no evidence to show that appellees had actual knowledge of the alleged defects. This appeal followed.
 I {¶ 12} Because appellants' three assignments of error challenge the propriety of the trial court's summary judgment decision, we consider them together.
 {¶ 13} In their first assignment of error, appellants assert that genuine issues of material fact remain as to whether appellees had prior knowledge of the alleged defects, whether the defects were open and obvious and discoverable upon a reasonable inspection and whether appellees concealed the defects. In their second assignment of error, appellants assert that genuine issues of material fact remain regarding whether appellees engaged in fraudulent misrepresentation because appellees failed to fully disclose the condition of the property on the disclosure form, which misled appellants as to the true extent of the defects. In their third assignment of error, appellants argue that the trial court erred by granting summary judgment on their breach of purchase contract claim because the purchase agreement included a requirement that the sellers disclose all defects of which they were aware and that *Page 8 
appellees failed to disclose all known defects.
 {¶ 14} Appellate courts review trial court summary judgment decisions de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine if summary judgment is appropriate. In other words, appellate courts need not defer to trial court summary judgment decisions. See Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-412, 599 N.E.2d 786. Thus, to determine whether a trial court properly awarded summary judgment, an appellate court must review the Civ.R. 56 summary judgment standard as well as the applicable law. Civ.R. 56(C) provides:
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Accordingly, trial courts may not grant summary judgment unless the evidence demonstrates that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and after viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Page 9 Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-430, 674 N.E.2d 1164.
 {¶ 15} Generally, the doctrine of caveat emptor bars a real estate purchaser from seeking recovery from the seller for structural defects. As the court stated in Layman v. Binns (1988), 35 Ohio St.3d 176,519 N.E.2d 642, syllabus: "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." Thus, the doctrine will not bar an action for a real estate defect if a buyer demonstrates that: (1) the complained of condition is latent or is not discoverable upon a reasonable inspection; (2) the buyer did not have an unimpeded opportunity to examine the premises; and (3) the seller acted fraudulently.
 {¶ 16} We note that the doctrine of caveat emptor does not preclude a buyer from recovery for all defects. Rather, the doctrine precludes buyers from recovering for patent, as opposed to latent, defects. Id. at 177; see, also, Barr v. Wolfe (Feb. 24, 2000), Lawrence App. No. 99CA17;Moody v. Blower (Apr. 19, 1999), Athens App. No. 98CA28. Were the rule otherwise, "nearly every sale would invite litigation instituted by a disappointed buyer." Barr.
 {¶ 17} Generally, an "as is"[2] clause in a real estate sales contract relieves the seller "of any duty to disclose that the property was in a defective condition." Kaye v. Buehrle (1983),8 Ohio App.3d 381, 457 N.E.2d 373, paragraph one of the syllabus. An *Page 10 
"as is" clause bars an action for "`passive nondisclosure' but does not shield the seller from an `active' fraud or commission (as opposed to a fraud of omission), i.e., a misrepresentation or fraudulent concealment." Rogers v. Hill (1998), 124 Ohio App.3d 468, 471,706 N.E.2d 438. Thus, an "as is" clause does not protect a seller who positively misrepresents or conceals the complained of condition. SeeEiland v. Coldwell Banker Hunter Realty (1997), 122 Ohio App.3d 446,457, 702 N.E.2d 116. "An `as is' clause cannot be relied on to bar a claim for fraudulent misrepresentation or fraudulent concealment."Kaye, paragraph two of the syllabus. Thus, while a seller may not have a duty to disclose a defective condition, the seller may not take affirmative steps to misrepresent or to conceal the condition.
 {¶ 18} In the case sub judice, appellants accepted the property "as is." Thus, they may recover from appellees only for fraudulent misrepresentation or concealment. To establish a cause of action for fraudulent misrepresentation or concealment, a plaintiff must prove: (1) a representation or, when a duty to disclose exists, concealment of a fact, (2) material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. See Burr v. Stark Cty. Bd. ofCommrs. (1986), 23 Ohio St.3d 69, 491 N.E.2d 1101, paragraph two of the syllabus.
 {¶ 19} In the case sub judice, we believe that the summary judgment evidentiary materials fully support the trial court's conclusion that no genuine issues of material fact remain as to whether appellees fraudulently misrepresented or concealed the condition *Page 11 
of the property. (See footnote for discussion of specific alleged defects).[3] *Page 12 
 {¶ 20} Appellants offer only speculation and unsupported assertions that are not sufficient to defeat appellees' summary judgment motion. `"[W]hen the moving party puts forth evidence intending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party. To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate "the early assessment of the merits of claims, pre-trial dismissal of meritless claims and defining and narrowing issues for trial.'"" Hooks v. Ciccolini, Summit App. No. 20745, 2002-Ohio-2322, quoting Bank One, N.A. v. Burkey (June 14, 2000), Lorain App. No. 99CA7359 (Slaby, P.J., dissenting in part).
 {¶ 21} Furthermore, to the extent that appellants appear to assert a cause of action based upon appellees' alleged failure to disclose the complained-of defects on the residential property disclosure form, we note that the statute does not create a cause of action based upon a seller's failure to disclose items that are not within the seller's actual knowledge. R.C. 5302.30(F)(1) states: "(F)(1) A transferor of residential real property is not liable in damages in a civil action for injury, death, or loss to person or property that allegedly arises from any error in, inaccuracy of, or omission of any item of information required to be disclosed in the property disclosure form if the error, inaccuracy, or omission was not within the transferor's actual knowledge."
 {¶ 22} In the case at bar, appellants have no evidence that appellees possessed *Page 13 
actual knowledge of any of the defects. The disclosure statute, R.C.5302.20, requires sellers to disclose only those defects within their actual knowledge. See Good v. McElhaney (Sept. 30, 1998), Athens App. No. 97CA41. The statute states: "The form * * * shall be designed to permit the transferor to disclose material matters relating to the physical condition of the property * * * that are within the actual knowledge of the transferor." R.C. 5302.20(D). Moreover, the disclosure form is not a substitute for a careful inspection by the buyer.Good. The duty to conduct a full inspection falls on the buyer, not the seller. Id. In the case sub judice, appellants could have performed a thorough home inspection prior to their purchase and discovered the perceived defects. Appellees provided appellants complete and unimpeded access to the structure and appellants should have taken full advantage of that opportunity.
 {¶ 23} For these same reasons, appellants' claim for breach of the purchase contract is meritless.[4] Appellants' claim presupposes that appellees possessed actual knowledge of the defects. As we stated above, appellants have no evidence to create a genuine issue of material fact as to whether appellees possessed actual knowledge of the defects. Rather, appellants speculate that appellees must have known of the defects.
 {¶ 24} Accordingly, based upon the foregoing reasons, we hereby overrule appellants' assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY *Page 14 
It is ordered that the judgment be affirmed and that appellees recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Kline, J. McFarland, J.: Concur in
[1] Appellants specifically complained of the following defects:
 "Outside gas grill and gas pipe to grill: The grill was deteriorated so badly that the gas burners and valves virtually disintegrated at touch. Further, the gas line had been turned off and very well should have been. However, the lack of service running to the grill masked the fact that, once it was turned back on, there was a severe gas leak that required immediate repair.
 Gas feed pipe: The day [appellants] took possession and [appellees] vacated, [appellants] noticed an odor of gas. The gas company was called and the gas company turned off the gas until [the] leak was repaired.
 Attic Exhaust Fan: Mr. Vadakin testified that he installed this device. However, following possession, it was apparent that the fan was not working properly and was, in fact, a shock/fire hazard. As Mr. Vadakin installed it, he surely should have known that he did so incorrectly.
 Outside yard lights: These items were disconnected at the time of viewing and Mr. Shaffer's inspection. This concealed the fact that they were not wired properly.
 Six Wooden Shutters: The shutters at the front of the home were dry-rotted so badly that they nearly fell apart. Mr. Vadakin testified that he painted these. The paint was the only thing holding them together. [Appellants] believe these shutters were painted in an effort to conceal the damage that existed and to make them `look good,' knowing that no potential buyer would ever physically touch the shutters prior to purchase for, such [sic] would not be part of a reasonable inspection.
 French Doors in Living Room and Dining Room: the french doors were also painted to conceal dry-rot damage. While Plaintiffs concede, as they did in deposition, that they could have touched the doors, and opened them during inspection, they contend that such was not a reasonable expectation of them and that requiring this would go beyond a reasonable inspection.
 Outside Drainage System: Mr. Vadakin claimed to have installed this. However, the drainpipe that was supposed to be on the north side of the home is nonexistent.
 Central Air Conditioning: The unit that was present was not working. In fact, Mr. Vadakin testified that he and Mrs. Vadakin had installed a window unit in their bedroom. One could reasonably question why such would be needed when there is a supposed functional central air system in the home. Mr. Vadakin claimed that his wife like[s] to sleep, `in a room that we all get blue lips.' However, an equally possible answer is that the central air did not work properly and therefore, a window unit was required to cool the bedroom. In addition, there were bricks placed around the existing central air until [sic] which concealed the deteriorated condition. What other reason could there have been for the placement of these bricks?
 Laundry Room Door Locks: This door was damaged as were the locks to the extent that one could simply push lightly on the same and gain entry. Again, this may have been something that could conceivably been discovered through Plaintiffs' visits to the home prior to purchase. However, are potential homebuyers generally going to push on every locked door to ensure that it is properly installed, in good condition and safe?
 Mansford Roof: The roof was damaged and had been patched together in numerous places by duct tape. Mr. Vadakin testified that, after being alerted to potential roof problems, he `patched' an area of the roof. However, it is apparent that numerous other areas had been patched well prior to that. None had been repaired properly.
 Wall Outlets, Switches, Dimmers, Lighting, Electrical Wiring: This is the problem that has become most apparent and that is the most concerning simply because of the scope and gravity of the problem. There are more than 200 improperly installed and/or improperly functioning outlets/switches within the home. Mr. Vadakin testified that he checked numerous switches and outlets following construction in order to ensure that all new outlets were properly grounded. This simply can not be due for, if he did in fact test them as claimed, he would have discovered all of the problems. In fact, Michael L. Stockey has since examined the home and found that numerous outlets were not properly grounded and there were many deficiencies with the home's wiring.
 Rodent Nests in Walls: There were nests of rodents rotting within the walls of this home. This is a condition that clearly could not have been seen by the naked eye. Instead, Mr. Boulton testified that in order to find this they had to `poke a lot of holds, and do a lot of vacuuming, and opened up ducts and opened up parts of the ceiling downstairs and the walls upstairs.' This clearly went beyond what one could be expected to find during the course of a `reasonable inspection.'
 Sunroom: When [appellants] inspected the house, the glass in the sunroom appeared to be very dirty. This condition masked the fact that a number of the Thermopane insulating glass units had failed. When insulating glass fails, it can be mistaken for dirty glass. Mr. Vadakin testified that he personally washed the glass in 2003. When a person washes defective Thermopane, it won't come clean. It is therefore obvious that the Thermopane has failed and must be replaced. Additionally, Mr. Vadakin testified that he had previously had defective Thermopane replaced by Murray Glass, indicating he knew what the condition was when he saw it."
[2] We note that courts generally treat an "in its present physical condition" clause the same as an "as is" clause. See, e.g, Rogers v.Hill (1998), 124 Ohio App.3d 468, 470, 471, 706 N.E.2d 438.
[3] Regarding appellants' argument that appellees fraudulently misrepresented the electrical wiring in the home, there is no evidence that appellees possessed actual knowledge of faulty or improper wiring. Mr. Vadakin testified that he checked a large number of outlets in the home and found them to be properly grounded. Simply because an electrical expert that appellants retained subsequently discovered alleged improper wiring does not result in the conclusion that appellees must have been aware of the situation. With respect to appellants' claim regarding the defective thermopane glass in the sunroom, they have no evidence that appellees affirmatively misrepresented the condition of the glass or concealed its condition. Appellants merely speculate that appellees had knowledge of its condition and concealed it. Concerning the roof, appellants do not have evidence that appellees fraudulently misrepresented the roof's condition or concealed its condition. Appellants' speculation is insufficient to overcome a properly supported summary judgment motion. Regarding appellants' complaint that appellees fraudulently misrepresented or concealed the gas line feed for the outdoor grill and the condition of the grill, they lack evidence to show that appellees possessed knowledge of these conditions. With respect to their claim that appellees fraudulently misrepresented or concealed the condition of the attic exhaust fan, appellants fail to point to specific evidence to show that appellees had knowledge of its condition. Simply because Mr. Vadakin installed it does not mean that he knew that it was arguably improperly installed. Indeed, just the opposite might be true: because Vadakin installed the fixture in his house, one would assume that he would want it properly installed and properly working.
Appellants assert that appellees concealed the condition of the outside yard lights by disconnecting them. Appellees, however, were absent from the property for extended periods of time and could have disconnected them for that purpose. There is no evidence that appellees knew that the lights did not work. Additionally, appellants could have readily discovered this condition during their home inspection. Appellants also fail to present evidence to show that appellees concealed the condition of the shutters or the french doors. Mr. Vadakin stated that he painted them in 1999 and did not discover dry rot. No evidence exists that he subsequently discovered and acquired knowledge that dry rot had damaged the wood, or that he took subsequent action to conceal dry rot. Further, this alleged defect was readily discoverable and identifiable through the home inspection. Regarding appellants' claim that appellees fraudulently misrepresented or concealed a problem with the outside drainage system, appellants again lack any evidence to create a genuine issue of material fact. Rather, they merely speculate that appellees possessed knowledge of an alleged defect because Mr. Vadakin installed the drainage system. Appellants further have not established that a genuine issue of material fact remains regarding their claim that appellees fraudulently misrepresented or concealed the condition of the central air conditioning system. Appellants have no evidence that appellees knew that the system did not work properly. The existence of a window air conditioning unit in the master bedroom does not establish knowledge of the alleged defect because appellees explained that Mrs. Vadakin likes to sleep in a cold room, and apparently, the central air conditioning system did not cool the room to her liking. Furthermore, appellants, during their viewings and inspections of the home, could have easily determined whether the central air unit worked properly.
[4] Appellants' complaint does not clearly state a cause of action for breach of the purchase contract and neither party addressed the breach of contract claim during the trial court proceedings. Nevertheless, we address the claim for the sake of argument. *Page 1