DECISION AND JUDGMENT ENTRY
{¶ 1} After her home suffered water damage, Phyllis Loveday hired her paramour to perform the repairs. She claims the insurance company's adjustor promised to supervise the repairs and make sure they were done properly. Upon subsequently discovering asbestos contamination in the work area, she sued her former boyfriend, the adjustor, and the Cincinnati Insurance Company.
 {¶ 2} Now Loveday appeals the trial court's decision granting summary judgment to Cincinnati Insurance Company and argues that Cincinnati's motion, which focused largely upon its duties under the insurance policy, "missed the point" and thus failed to address her promissory estoppel claim. She contends the basis of her claim is that Cincinnati's adjuster made assurances and *Page 2 
representations to her concerning his oversight and the quality of work performed on her flooded basement and that Cincinnati is therefore responsible, under an agency theory, for the faulty repairs that caused asbestos damage to her home. While Cincinnati's motion did not expressly refer to Loveday's "promissory estoppel" claim, it does demonstrate the lack of a genuine issue of material fact concerning whether the repairs caused asbestos damage, and thus, whether the adjustor's representations caused her to suffer any injury. Because Loveday then failed to meet her reciprocal burden to set forth specific facts beyond the conclusory allegations in her Complaint on this issue, summary judgment on her claim was proper.
 I. The Facts {¶ 3} Loveday owns a very old Victorian home that is insured by Cincinnati. In December 2002, she presented a loss claim for water damage to her home after an outside spigot froze and burst causing her basement to flood. Kevin Wechter, an insurance adjustor for Cincinnati, handled the claim. Loveday hired David Smith, who owns Essential Heating, Cooling, Refrigeration, Inc. ("Essential Heating and Cooling"), to repair the damages, including repairing and/or replacing the boiler, boiler burner, and the hot water tank. At the time, Smith was her boyfriend and was also acting under a power of attorney for her. According to Wechter, he issued checks to Loveday totaling $12,896.44 for this claim. The next month, Smith reported another loss after a pipe in the upstairs bathroom burst causing water to leak through the floor and resulting in some flooding in the basement. For this claim, Wechter paid out a total of $28,000.21 *Page 3 
to Loveday. Loveday again hired Smith, who still had her power of attorney, to do the work. In December 2003, Loveday requested Wechter to reopen her claim because Smith "disturbed" asbestos insulation when he installed a new boiler. Cincinnati denied her request because there was no evidence that flooding had caused the damage to the pipes and because Cincinnati was not responsible for the workmanship of the person she chose to do the work.
 {¶ 4} Loveday filed this action against Smith, Essential Heating and Cooling, Cincinnati, and Wechter.[1] In her Complaint, Loveday alleged that she was very ill in 2002 and was not living in her home at the time the pipes burst; she was incapacitated and had previously executed a general power of attorney giving Smith legal authority to act on her behalf. She hired Smith to repair the damage to the home, and Cincinnati agreed to cover the loss. She also alleged that Wechter led her to believe that he had inspected the premises and approved the contractor, i.e., Smith. She alleged that she was unable to personally supervise the repairs because she was living outside the home and that Wechter made several assurances to her that he was making trips to her home to monitor the repair work and that he "would take of her." Specifically, she alleged that both "individual Defendants" assured her that the boiler could be replaced without disturbing the asbestos casing around her furnace and that "she relied upon the Defendants to her detriment." She claimed that after returning to her home in 2004, she discovered that Smith's repair work was inadequate; the furnace boiler was improperly replaced, and the asbestos casing around the surrounding pipes was "disturbed" causing her to suffer from exposure to the asbestos. *Page 4 
 {¶ 5} In the third count of Loveday's Complaint, she incorporated all of her previous factual allegations and then set forth her claims against Wechter and Cincinnati. She alleged that Cincinnati agreed to cover the loss, including the proper replacement of the furnace boiler. She alleged that Smith, who was "approved" by Wechter and paid by Cincinnati, failed to provide adequate repairs and return the home to its state prior to the loss. Finally, she alleged that Wechter did not "take care of" either her or her home. She then prayed for judgment against Cincinnati and Wechter for "breach of contract and wrongful denial of insurance." She did not expressly assert a promissory estoppel claim.
 {¶ 6} Cincinnati and Wechter filed a joint motion for summary judgment and supported the motion with the deposition testimony of Loveday and Smith, as well as the affidavits of Wechter and Anthony F. Baumgard, an engineer who inspected Loveday's basement.[2] Loveday filed a response and presented her own affidavit and the affidavit of Winston Saunders, an "expert" in the filed of asbestos contamination and removal. In its reply memorandum, Cincinnati *Page 5 
moved to strike Saunders' affidavit because Loveday had been uncooperative in producing him for a deposition and/or presenting a curriculum vitae. In its decision, the trial court ordered Saunders' affidavit stricken and granted judgment in favor of Cincinnati and Wechter.[3] The trial court did not give the basis for its decision granting judgment in Cincinnati's favor. Loveday now appeals.
 II. Assignment of Error {¶ 7} Loveday raises the following assignment of error:
 I. THE LOWER COURT ERRED BY GRANTING DEFENDANTS/APPELLEES' MOTION FOR SUMMARY JUDGMENT SINCE THERE REMAINED MATERIAL ISSUES OF FACT FOR THE TRIER OF FACT TO DETERMINE.
 III. Standard of Review {¶ 8} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard; we review the judgment independently and without deference to the trial court's determination.Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243,1245. Summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. Id. See alsoBostic v. Connor (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, and Civ. R. 56(C).
 {¶ 9} The moving party has the initial burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of *Page 6 
law. See Dresher v. Burt (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264;Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 120, 570 N.E.2d 1108;Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. The moving party must inform the trial court of the basis of the motion, and identify those portions of the record that demonstrate the absence of a material fact. Dresher, 75 Ohio St.3d at 293. To meet its burden, the moving party must specifically refer to the "pleadings, depositions, answers to interrogatories, written stipulations of fact, if any," which affirmatively demonstrate that the non-moving party has no evidence to support the non-moving party's claims. Civ. R. 56(C); Id. That is, a mere assertion that the other side cannot prove its case is not enough; the movant must identify some summary judgment evidence that affirmatively shows the nonmoving party has no evidence to support its claims.Dresher, 75 Ohio St.3d at 293. If the moving party satisfies its initial burden, the nonmoving party then has the reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. Mere speculation and unsupported conclusory assertions are not sufficient. Boulton v. Vadakin, Washington App. No. 07 CA26, 2008-Ohio-666, at ¶ 20. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. Kulch v.Structural Fibers, Inc., 78 Ohio St.3d 134, 145, 1997-Ohio-219,677 N.E.2d 308, citing Dresher v. Burt, 75 Ohio St.3d at 295. *Page 7 
 IV. Promissory Estoppel {¶ 10} In her sole assignment of error, Loveday contends that the trial court erred in granting summary judgment and argues that there is a genuine issue of material fact concerning her promissory estoppel claim against Cincinnati. She does not contest the trial court's decision granting judgment in Cincinnati's favor on her "breach of contract and wrongful denial of insurance" claims.
 {¶ 11} Promissory estoppel is a quasi-contractual or equitable doctrine. See Worthington dba S.E.W. Maintenance v. SpeedwaySuperAmerica LLC, Scioto App. No. 04CA2938, 2004-Ohio-5077 at ¶ 13. The elements of promissory estoppel require: "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." McCroskey v. State (1983), 8 Ohio St.3d 29, 30,456 N.E.2d 1204, citing Restatement of the Law, Contracts 2d (1973), Section 90. In order to prevail on a claim of promissory estoppel, Loveday must show a clear and unambiguous promise and reliance by the party to whom the promise is made. The reliance must be reasonable and foreseeable, and the party relying on the promise must have been injured by the reliance. See Doe v. Adkins (1996), 110 Ohio App.3d 427, 437,674 N.E.2d 731, citing Healey v. Republic Powdered Metals, Inc. (1992),85 Ohio App.3d 281, 284, 619 N.E.2d 1035. Furthermore, the party who asserts the promissory estoppel claim bears the burden to prove, by clear and convincing evidence, all *Page 8 
the elements of the claim. See In re Estate of Popov, Lawrence App. No. 02CA26, 2003-Ohio-4556 at ¶ 30.
 A. The Sufficiency of the Pleading {¶ 12} Because Loveday contends that Cincinnati's motion failed to address her promissory estoppel claim, we must first determine whether her Complaint gave Cincinnati reasonable notice of this claim.
 {¶ 13} Under the rules of notice pleading, Civ. R. 8(A) requires only a short and plain statement that gives the defendant fair notice of the plaintiff's claim and the grounds upon which it is based. Patrick v.Wertman (1996), 113 Ohio App.3d 713, 716, 681 N.E.2d 1385; see, also,Illinois Controls, Inc. v. Langham (1994), 70 Ohio St.3d 512,639 N.E.2d 771. Generally, a plaintiff is not required to provide specific facts or elements at the pleading stage and need only give reasonable notice of the claim. State ex rel. Harris v. Toledo (1995), 74 Ohio St.3d 36, 37,656 N.E.2d 334. Outside of a few exceptions, none of which apply here, a complaint need not contain more than "brief and sketchy allegations of fact to survive a motion to dismiss under the notice pleading rule."Vinicky v. Pristas, 163 Ohio App.3d 508, 2005-Ohio-5196, 839 N.E.2d 88
at ¶ 6, citing York v. Ohio State Highway Patrol (1991),60 Ohio St.3d 143, 146, 573 N.E.2d 1063. The simplified notice-pleading standard relies on liberal discovery rules and summary-judgment motions to define disputed facts and issues and to dispose of nonmeritorious claims. Id. "Because it is so easy for the pleader to satisfy the standard of Civ. R. 8(A), few complaints are subject to dismissal." Leichtman v. *Page 9 WLW Jacor Communications, Inc. (1994), 92 Ohio App.3d 232, 234,634 N.E.2d 697.
 {¶ 14} Given Ohio's notice pleading, we conclude that Loveday's Complaint sufficiently sets forth a claim of promissory estoppel against Cincinnati. As we previously stated, promissory estoppel is a "quasi-contractual" doctrine. Here, Loveday alleged that Wechter made "assurances" to her that he was "monitoring" Smith's repair work and that the boiler could be replaced without disturbing the asbestos casing around her furnace. She specifically alleged that she "relied" upon the Defendants to her "detriment." She then alleged that Cincinnati breached its contractual obligations because Smith, the contractor Wechter "approved" and Cincinnati paid, failed to adequately make the necessary repairs and in fact "disturbed" pipes, causing asbestos damage. In essence, Loveday alleged that Wechter promised to oversee the repairs, that she detrimentally relied upon Wechter's assurances that the boiler could be replaced without disturbing the asbestos, and that Cincinnati is now obligated to pay for the damages caused by the asbestos disruption because it paid Smith despite the fact that his repairs were faulty. Given all of the allegations in Loveday's complaint, we believe she sufficiently put Cincinnati on notice that she was alleging a promissory estoppel claim against it based on her detrimental reliance of its adjuster's representations.[4] *Page 10 
 B. Cincinnati's Motion for Summary Judgment {¶ 15} Loveday argues that Cincinnati's motion "missed the point" of her promissory estoppel claim and focused only upon her breach of contract action. She contends the basis for her claim is that Cincinnati assumed the responsibility for ensuring the suitability of Smith's repairs because its agent, Wechter, assured her that he would oversee the repairs due to her inability to do so, and she relied on his representations that the work was being done to a satisfactory level. Therefore, she contends Cincinnati is obligated to compensate her for the costs of repairs necessary to correct the damages caused by the asbestos disruption. Thus, she contends that contrary to Cincinnati's claims, Baumgard's affidavit was not dispositive of the issue of liability because it did not address her underlying claim that Smith improperly replaced the furnace broiler and "disturbed" surrounding pipes containing asbestos. In other words, she does not dispute Baumgard's opinion that water damage did not cause to damage to the insulation to the pipes.
 {¶ 16} Cincinnati argues that summary judgment in its favor was proper because the there is no evidence that Smith's repairs were done in an improper fashion, that his repairs caused asbestos contamination, or that he failed to require that the removal of asbestos-filled furnace piping be done in a responsible manner. In support of its motion, Cincinnati tendered the affidavit of its expert, Baumgard, who disputed Loveday's allegations; it also relied upon Smith's deposition testimony, where he denied that his work caused asbestos contamination. Cincinnati argues that because the affidavit of Loveday's "expert" *Page 11 
was stricken, Loveday failed to meet her reciprocal evidentiary burden of demonstrating a genuine issue of material fact concerning these issues, i.e., she simply restated the allegations in her Complaint.
 {¶ 17} The party moving for summary judgment "must state specifically which areas of the opponent's claim raise no genuine issue of material fact" and must support its assertion with affidavits or other evidence as allowed by Civ. R. 56(C). Mitseff, 38 Ohio St.3d at 115, citingHarless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46 (citations omitted); Dresher, 75 Ohio St.3d at 293. Such specificity, is necessary, "* * * in order to allow the opposing party a meaningful opportunity to respond." Mitseff at 116. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher at 292.
 {¶ 18} Here, Cincinnati's motion did not explicitly reference Loveday's "promissory estoppel" claim. However, its motion did address the essence of her claim and did specifically state which areas of her claim raised no genuine issue of material fact. For example, Cincinnati argued that the evidence did not support Loveday's claim that Wechter agreed to supervise Smith's repairs.[5] Cincinnati also argued that Loveday had no right to believe that Cincinnati would be required to correct Smith's poor workmanship, essentially claiming that any such reliance was unreasonable because she personally selected Smith, who was in fact her boyfriend and attorney in fact. Most importantly, however, Cincinnati's motion addressed the lack of a genuine issue of material fact *Page 12 
concerning whether Smith's repairs actually "disturbed" any asbestos-filled pipes. In other words, Cincinnati's motion disputed whether Loveday's reliance on Wechter's assurances resulted in injury, an essential element of her promissory estoppel claim.
 {¶ 19} Cincinnati relied on portions of Smith's deposition testimony to support its claims that his repair work was done in a satisfactory manner. Smith's deposition testimony states:
Q. So obviously you were in the basement sometime prior to these pipes bursting and causing the water damage?
A. I have a carbon monoxide tester, sensor, and it went crazy in the house. So I went to identify the source of the carbon monoxide, is what I did.
Q. Okay.
A. And I went to the basement and I found the vent from the water heater off of the water heater. And so when the water heater was working the carbon monoxide was leaking out into the house.
Q. Did you repair it, the hot water heater?
A. Yes, I did.
Q. How did you repair it?
A. I attached the vent and secured it with screws and aluminum tape, and secured it.
Q. All right, when you were down there and did that work did you have the opportunity or the occasion, or do you remember what the condition of the basement was like at that time?
A. It had been flooded before.
Q. Why do you say that?
A. The boiler itself had no insulation as I remember. Someone had apparently re-gasketed it at one time. The boiler was very, very old. It was a *Page 13 
slab type boiler. And when you re-gasket a slab type boiler you — it is necessary to disconnect the supply lines, all of the plumbing to it. And that is where this asbestos thing comes in. Where they all say you disturbed that — no. This house has been worked on a long time before I ever got there. In my opinion. You can call in all the experts you want, but that is my opinion.
Q. Well, let me ask you; you were there and you replaced the boiler and you replaced the burner?
A. Right.
Q. And you also did some work on the hot water tank?
A. Right.
Q. At any time you did all of that work did you disturb any asbestos?
A. No, absolutely not.
Q. Well, did you see that there was asbestos in the basement?
A. I did not — well, did I see asbestos? I am not qualified to answer that because it would require laboratory testing to determine if it was asbestos.
Q. So you don't know whether you saw it or not?
A. I don't know.
Q. There has been some mention that the pipes may have been wrapped in asbestos tape.
A. They may very well be.
Q. Did you see the condition of pipes being ripped, or torn, the tapes that were wrapped around the pipes, when you were in the basement?
A. None of the area I was working in was disturbed.
Q. There were two rooms in that basement?
A. I don't remember.
Q. The area you were working in, I presume, was the area where the burner would be in the boiler?
 A. Yes. *Page 14 
Q. And where the hot water heater was located?
A. Right.
Q. So it is my understanding from your testimony that when you did the repair work you did not disturb any asbestos?
A. No.
* * *
Q. How would you characterize the work you performed on Ms. Loveday's equipment that was in the basement? I am referring to the burner and the hot water tank and the boiler?
A. The boiler, like I said, without specifics on safety or whatever that they are discussing, without knowing that — it was a very brutal job. We were out there in sub-freezing temperatures pumping water out of a basement. I had to take the boiler apart segment by segment to get it out of the basement. Any pipes that were insulated were already compromised from any prior repairs. That is my assessment of the situation.
 {¶ 20} Smith observed the condition of the basement and indicted that it had previously been flooded; the boiler had no insulation and had been re-gasketed, so all the supply lines had already been disconnected. He also indicated that he did not disturb any asbestos when he replaced the boiler and the burner and when he worked on the water tank, but noted that to determine whether there was actually "asbestos" in the basement would require laboratory testing. However, he also stated that while some pipes in the basement may have been wrapped in asbestos tape, he did not notice any ripped, torn, or disturbed tape on pipes in the area of the basement where he worked. Thus, Smith's deposition testimony affirmatively states that his repairs did not cause asbestos contamination in her home. *Page 15 
 {¶ 21} Cincinnati also submitted Baumgard's affidavit. In his affidavit, Baumgard stated that the purpose of his inspection of Loveday's home was "to render an opinion as to whether flooding in the basement caused by a broken water pipe over the kitchen caused damage to insulation around heating pipes in the basement." He gave this opinion:
 [T]here were no obvious locations where insulation to the pipes were damaged by water. Pipes in the basement appeared to be in the same condition as those in the crawl space of the home. The insulation on the heating pipes in the basement were in poor condition due to age, high levels of moisture and lack of long term maintenance.
 {¶ 22} While his affidavit does not specifically address Smith's repairs, it does states that the poor condition of the pipes in the basement was in fact due to reasons other than faulty repairs, i.e., age, high levels of moisture and lack of long term maintenance.
 {¶ 23} In response to Cincinnati's motion, Loveday submitted her own affidavit which states: "As indicated in my complaint at paragraph 18, the work done to the boiler, as approved by Cincinnati Insurance and Wechter, was improper, thus causing exposure to asbestos."
 {¶ 24} When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. See Civ. R. 56(E). Here, Loveday simply referred to the allegations in her Complaint and some conversations that arguably indicated the presence of asbestos. But, she offered no specific facts showing that there was a genuine *Page 16 
issue of material fact concerning whether Smith's work was improper and caused asbestos contamination. In short, Loveday failed to meet her reciprocal burden under Civ. R. 56(E).
 {¶ 25} Because Cincinnati's properly supported motion showed the absence of a genuine issue of material fact concerning as essential element of Loveday's promissory claim, and because Loveday failed to meet her reciprocal evidentiary burden, summary judgment in Cincinnati's favor was proper. Accordingly, we affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 17 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] Loveday later voluntarily dismissed Smith and Essential Heating and Cooling with prejudice.
[2] In her response, Loveday stated:
 I. Plaintiff does not oppose the dismissal of Kevin Wechter as a party and voluntarily dismisses him as such.
 Plaintiff had previously filed against both Cincinnati Insurance and the adjustor, Kevin Wechter. At this time, it is clear that Kevin Wechter and Cincinnati Insurance have agreed that any and all word performed was done pursuant to Mr. Wechter's employment with Cincinnati Insurance. Because Plaintiff had previously named him as a defendant only to protect against the assertion that his actions were "outside the scope" of his employment, Plaintiff has no problem with the court entering summary judgment as to the claim filed against him or Plaintiff voluntarily dismissing its claim against him by the filing of this response.
On appeal, Loveland does not argue that the trial court erred in granting summary judgment in Wechter's favor.
[3] Because Loveday does not contest the trial court's decision to strike Saunders' affidavit, we do not address it.
[4] While Ohio does not recognize a cause of action for "detrimental reliance," see Carpenter v. Scherer Mountain Ins. Agency (1999),135 Ohio App.3d 316, at fn3, 733 N.E.2d 1196, citing Gottfried-Smith v.Gottfried (1997), 119 Ohio App.3d 646, 650, 695 N.E.2d 1229, detrimental reliance arises as an element of various causes of action (e.g. promissory estoppel, misrepresentation). But it is not a cause of action unto itself. Id.
[5] Cincinnati submitted Wechter's affidavit. However, noticeably absent from his affidavit was a denial that he in fact made such assurances and representations. *Page 1